Sarah R. Nichols (SBN 233099)
**NICHOLS LAW, P.C.**
9 Pier, Ste 100
San Francisco, California 94109
Telephone: (415) 710-9116
Email: sarah@nicholslawyer.com

Attorneys for Plaintiff
RICKY L. APPIN

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY L. APPIN,<br><br>        Plaintiff,<br><br>v.<br><br>MERGERMARKET (U.S.) LTD., a New York Corporation, MERGERMARKET LIMITED, ION TRADING, INC., a New York Corporation, ION INVESTMENT GROUP LIMITED, a foreign corporation; ACURIS INC., a Delaware Corporation, DEALOGIC, L.L.C., a foreign LLC; and DOES 1-10,<br><br>        Defendants. | Case No. 4:23-cv-03372-HSG<br><br>**FIRST AMENDED COMPLAINT FOR (1) AGE DISCRIMINATION; (2) DISABILITY DISCRIMINATION; (3) INTERFERENCE WITH CFRA RIGHTS (4) RETALIATION IN VIOLATION OF CFRA; (5) GENDER DISCRIMINATION; (6) RETALIATION; (7) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; AND (8) BREACH OF CONTRACT.JURY TRIAL DEMANDED**<br><br>Assigned to Hon. Haywood S. Gilliam, Jr.<br><br>State Court Action Filed: April 7, 2023<br>Removed to Federal Court: July 6, 2023 |

Plaintiff RICKY L. APPIN ("APPIN" or "Plaintiff") complains and alleges the following:

**I.    NATURE OF CASE**

1.    Plaintiff APPIN is a 74-year-old transgender woman who worked for Defendants MERGERMARKET (U.S.) LTD. ("MERGERMARKET U.S."), ACURIS INC. ("ACURIS"), MERGERMARKET LIMITED, ION INVESTMENT GROUP LIMITED. ("ION GROUP");

ION TRADING INC. ("ION TRADING"), and DEALOGIC, L.L.C. ("DEALOGIC") for 19 years until her employment was suddenly terminated on September 14, 2022.

2. ION GROUP owns a number of entities including the other named Defendants who are known for merger and acquisition intelligence. These entities and related companies have over 1,300 staff, including 600 journalists and analysts, in 67 locations around the world, with headquarters in London, New York, Mumbai and Hong Kong. Despite specializing in merger and acquisition intelligence, Defendants bungled their own merger and discarded Plaintiff, a valuable employee, in violation of California law.

3. Plaintiff was one of the five staff members responsible for launching Defendant MERGERMARKET U.S. in its U.S. location in Manhattan, New York and throughout her employment, Ms. Appin has held various positions of increasing importance with Defendant.

4. At the time of her termination, Ms. Appin worked as Global Head Content Editor of the Fixed Income Group, and Director of Operations and Logistics, earning a base salary of $200,000 per year.

5. Throughout Ms. Appin's tenure, she maintained multiple roles and displayed a wide variety of skill sets, contributing in many ways as a loyal employee diligently saving Defendants millions of dollars.

6. CEO, Hamilton Matthews, was so grateful for Ms. Appin's contributions to the Defendants that in 2018, he promised her that the Defendants would "take care of" her when she retired. Ms. Appin relied on that promise to her detriment. Defendants fired her under the guise of "restructuring" and failed to fulfill the promise it made to Ms. Appin.

7. Ms. Appin was an employee of MERGERMARKET LIMITED and MERGERMARKET U.S. when ION GROUP acquired these entities on or around May 13, 2019. In fact, Plaintiff's skills and experience in numerous areas greatly contributed to the growth and success of the Defendants' reputation providing information and analysis in relation to mergers and acquisitions.

8. After ION GROUP's acquisition, Defendants passed Plaintiff over for pay increases. Ms. Appin was explicitly told to "stay under the radar" by senior management and that she could not get a pay increase. On information and belief, males younger than Ms. Appin were given bonuses and pay increases. Despite being very energetic and active, Ms. Appin was repeatedly treated differently because of her age (73 at the time) and often asked when she would retire.

9. Ms. Appin complained, on several occasions, to Yanita Morris and Kunal Gullapalli, that she had not been treated fairly after the ION GROUP acquisition, specifically, with respect to her pay and bonuses. Defendants ignored these complaints.

10. It is reprehensible that companies that practice almost exclusively reporting on mergers and acquisitions has let their long-serving, dedicated employee suffer because of their own merger activity.

11. In or around January 2022, Plaintiff suffered a painful fall that injured her substantially, limiting her mobility and ability to walk. Ms. Appin thereafter took time off work to attend to her serious injury. When Ms. Appin informed management that she needed further surgery in September 2022, she was told, "It seems like you get hurt or have some health issue every year." On information and belief, this comment was made in reference to her gender confirmation surgeries.

12. Defendants terminated Plaintiff on September 14, 2022, immediately after Plaintiff's final complaints of unfair treatment and right before surgery was scheduled for September 26, 2022. Defendant MERGERMARKET U.S. listed the following individuals and their employers on their Initial Discovery Disclosures: Yanita Morris (Dealogic L.L.C), Kunal Gullapalli (Chief Financial Officer, ION Trading, Inc.), Jody Drulard (Chief Executive Officer, Dealogic L.L.C.), Mark Seber (former Human Resources Director, Dealogic L.L.C.), Khrystyna Kobryn (Human Resources Business Partner, Mergermarket Limited).

13. With respect to her age (73, at the time), Defendants terminated Ms. Appin and one other employee, Mr. Stucker, age (67), under the guise of "restructuring". Three other

younger workers on the team were not terminated. Other than the vague explanation of "restructuring," Ms. Appin was not provided any specific reasons for her termination.

## II. PARTIES

14. At all relevant times, Plaintiff APPIN was a resident of the City of Gualala, an unincorporated County of Mendocino, and a citizen of California.

15. Plaintiff is informed and believes, and on that basis alleges, that Defendant ION GROUP is, and at all relevant times was, an Irish corporation with its U.S. headquarters at 1345 6th Ave. 50th Floor, New York, NY, 10105.

16. Plaintiff is informed and believes, and on that basis alleges, that Defendant ION TRADING is, and at all relevant times was, a New York corporation with its principal place of business at 1335 Avenue of the Americas, New York, NY, 10105.

17. Plaintiff is informed and believes, and on that basis alleges, that Defendant ACURIS is, and at all relevant times was, a Delaware corporation doing business in California, and a wholly owned subsidiary of Defendant ION GROUP. At all relevant times, Defendant ACURIS has its principal place of business at 1313 Lord Sterling Road Washington Crossing, PA 1987.

18. Plaintiff is informed and believes, and on that basis alleges, that Defendant DEALOGIC, L.L.C. is, and at all relevant times was, a foreign corporation doing business in California and a wholly owned subsidiary of Defendant ION GROUP. DEALOGIC, L.L.C.'s U.S. headquarters are at 1345 Ave of the Americas, 49th Floor, New York, NY, 10105.

19. Plaintiff is informed and believes, and on that basis alleges, that Defendant MERGERMARKET U.S., is, and at all relevant times was, a New York corporation doing business in California, and a wholly owned subsidiary of Defendant ION GROUP. At all relevant times, Defendant MERGERMARKET U.S. has its principal place of business at 1345 Ave of the Americas, 49th Floor, New York, NY, 10105.

20. Plaintiff is informed and believes, and on that basis alleges, that Defendant MERGERMARKET LIMITED, is, and at all relevant times was, a corporation doing business

in California, and a wholly owned subsidiary of Defendant ION GROUP. At all relevant times, Defendant MERGERMARKET LIMITED has its principal place of business at 1345 6th Ave. 50th Floor, New York, NY, 10105.

21. Plaintiff is informed and believes, and on that basis alleges, that Defendants were joint employers of Plaintiff. Kunal Gullapalli (ION Trading, Inc.), Jody Drulard (Dealogic L.L.C.), Mark Seber (Dealogic L.L.C.), Khrystyna Kobryn (Mergermarket Limited), and Yanita Morris (Dealogic L.L.C.) were all listed on Mergermarket U.S.'s Initial Discovery as decision-makers in relation to the termination of Plaintiff's employment.

22. Plaintiff is informed and believes, and on that basis alleges, that at all relevant times Defendants were the agents, parent or subsidiary corporation(s), joint employer(s), alter ego(s) and/or joint venture(s) of the other Defendants, and each of them, and in doing the things alleged herein were acting within the course and scope of such legal relationship, and with the permission and consent of each other Defendant. As a result, Defendants are jointly and severally liable for the full amount of the damages owed to Plaintiff.

23. The true names and capacities, whether individual, corporate, or otherwise, of Defendants named herein is unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities of such Defendants if and when Plaintiff ascertains any such additional defendants that are legally responsible in some manner and/or caused the damages to Plaintiff as alleged herein.

### III. JURISDICTION AND VENUE

24. This Court has jurisdiction over this matter because Plaintiff is a resident of Mendocino County, California and one or more Defendant is a resident of another state. Thus, diversity of citizenship exists.

### IV. ADMINISTRATIVE PROCEEDINGS

25. On January 20, 2023, Plaintiff filed a timely charge with the California Rights Department ("CRD") pursuant to the California Fair Employment and Housing Act, Government Code §§ 12900 et seq., describing the allegations included herein. Plaintiff received her right to

sue letter on or about January 20, 2023, thus exhausting her administrative remedies. On January 22, 2024, Plaintiff filed a timely amended charge with the CRD pursuant to the California Fair Employment and Housing Act, Government Code §§ 12900 et seq., describing the allegations included herein. Plaintiff received her right to sue letter on or about January 22, 2024, thus exhausting her administrative remedies.

## V.   FACTUAL ALLEGATIONS

26. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

## FIRST CAUSE OF ACTION

### Age Discrimination in Violation of FEHA

### (Gov. Code § 12940(a))

### Against All Defendants

27. The Fair Employment and Housing Act (the "FEHA"), Government Code §§ 12900 et seq., prohibits employers from discriminating against employees on the basis of age. See Government Code §§ 12940(a), 12941, 12942.

28. Plaintiff was, at all relevant times, an "employee" of Defendants, within the meaning of the FEHA. See Government Code §§ 12926(c), 12940 [FEHA prohibits discriminatory practices against "any person"]; 2 CCR § 11008(b) [employee is "any individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written."]

29. Defendants were, at all relevant times, "employers" as defined by Government Code § 12926(d), and subject to the FEHA's provisions.

30. In the context of age discrimination, pursuant to Government Code § 12926(b), "age" refers to the chronological age of any individual who has reached a 40th birthday.

31. Plaintiff was born May 25, 1949, and is therefore over the age of forty.

32. Plaintiff's age was a substantial motivating factor in Defendants' decision to terminate Plaintiff's employment, and to take other employment actions adverse to Plaintiff.

Accordingly, in terminating Plaintiff's employment and taking other such unlawful actions as described herein, Defendants intentionally discriminated against Plaintiff on the basis of her age and/or had employment practices and policies with a disproportionate effect on persons over 40 years old, including but not limited to in violation of the FEHA.

33. With respect to her age (73 at the time of her termination), Defendants have targeted Ms. Appin and at least one other employee, Mr. Stucker, because of his age (67) under the guise of "restructuring," which has the effect of eliminating older workers. Three other younger workers on the team were not terminated and Ms. Appin was often asked when she would retire. Other than the vague explanation of "restructuring," Ms. Appin was not provided with any specific reasons why she was being terminated. Ms. Appin's performance also would not justify her termination; on the contrary, she was an exceptional performer who received regular praise from executive leadership and colleagues. Her contributions over her 19+ years with the Defendants are beyond dispute, including saving Defendants millions of dollars.

34. Ms. Appin intended to work for many more years, which she had communicated to the Defendants on multiple occasions, after repeatedly being asked "when do you plan to retire?"

35. Accordingly, in terminating Plaintiff's employment and taking other such unlawful actions as described herein, Defendants intentionally discriminated against Plaintiff on the basis of her age and/or had employment practices and policies with a disproportionate effect on persons over 40, including but not limited to in violation of the FEHA.

36. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, emotional and physical distress; and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Plaintiff is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Plaintiff, but exceed the jurisdictional limits of this Court. Plaintiff will prove such damages at trial.

37. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Plaintiff's rights, and with a malicious, wanton, and oppressive intent to cause injury to Plaintiff, which did in fact subject Plaintiff to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294 so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

## Disability Discrimination in Violation of FEHA

## (Gov. Code § 12940(a))

## Against All Defendants

38. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

39. The Fair Employment and Housing Act (the "FEHA"), Government Code §§ 12900 et seq., prohibits employers from discriminating against employees on the basis of "physical disability, mental disability [and] medical condition…." See Government Code § 12940(a); see also Government Code § 12920 [public policy to have employment without disability discrimination]; 2 CCR § 11065(d).

40. Plaintiff was, at all relevant times, an "employee" of Defendants, within the meaning of the FEHA. See Government Code §§ 12926(c), 12940 [FEHA prohibits discriminatory practices against "any person"]; 2 CCR § 11008(b) [employee is "any individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written."].

41. Defendants were, at all relevant times, "employers" as defined by Government Code § 12926(d), and subject to the FEHA's provisions.

42. After suffering a fall in January 2022, Plaintiff had a disability that limited her mobility and ability to walk. See Government Code §§ 12926(m), 12926.1(b), (c); 2 CCR §

11065. Nonetheless, Plaintiff was able to perform the essential job duties of her position with reasonable accommodation, and indeed performed them well.

43. Defendants knew or should have known about Plaintiff's disability. When Ms. Appin informed management that she needed further surgery in September 2022, she was told, "It seems like you get hurt or have some health issue every year." It is no coincidence the termination was right before surgery scheduled for September 26, 2022.

44. Plaintiff's disability was a substantial motivating factor in Defendants' decision to terminate Plaintiff's employment, and to take other employment actions adverse to Plaintiff. Accordingly, in terminating Plaintiff's employment and taking other such unlawful actions as described herein, Defendants intentionally discriminated against Plaintiff on the basis of her disability and/or had employment practices and policies with a disproportionate effect on disabled persons, including but not limited to in violation of the FEHA.

45. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, emotional and physical distress; and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Plaintiff is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Plaintiff, but exceed the jurisdictional limits of this Court. Plaintiff will prove such damages at trial.

46. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Plaintiff's rights, and with a malicious, wanton, and oppressive intent to cause injury to Plaintiff, which did in fact subject Plaintiff to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294 so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

//

//

## THIRD CAUSE OF ACTION

### Interference with CFRA Rights

### (Cal. Code Regs. tit. 2, § 11094)

### Against All Defendants

47. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

48. The California Family Rights Act ("CFRA") prohibits employers from interfering with the exercise of rights provided by CFRA, which includes "[t]erminating an employee when it anticipates an otherwise eligible employee will be asking for a CFRA-qualifying leave in the future." CFRA's prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee for having exercised or attempted to exercise CFRA rights or giving information or testimony regarding the employee's CFRA leave.

49. Defendant interfered with Plaintiff's CFRA rights because they knew she was going to be needing surgery and they anticipated she would take leave. They terminated her employment twelve (12) days before said surgery was scheduled. To reiterate, when Ms. Appin informed management that she would need further surgery, she was told, "It seems like you get hurt or have some health issue every year." Defendant was aware Plaintiff took leave in the past, and shortly after Plaintiff notified Defendant that she would need to take further leave, Defendants terminated Plaintiff's employment.

50. Plaintiff's notification of her future exercise of her right to medical leave was due to a serious health condition. Defendants' decision to terminate Plaintiff's employment, and to take other employment actions adverse to Plaintiff, was motivated by Plaintiff's medical condition and her past and future medical leave.

51. Accordingly, in terminating Plaintiff's employment and taking other such unlawful actions as described herein, Defendants unlawfully discriminated against Plaintiff for previously exercising her right to take medical leave and preventing her from taking future leave, in violation of CFRA.

52. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff, Plaintiff suffered and continues to suffer substantial humiliation, mental anguish, emotional and physical distress; and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Plaintiff is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Plaintiff, but exceed the jurisdictional limits of this Court. Plaintiff will prove such damages at trial.

53. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Plaintiff's rights, and with a malicious, wanton, and oppressive intent to cause injury to Plaintiff, which did in fact subject Plaintiff to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294 so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION

**Retaliation in Violation of California Family Rights Act**

**(Gov. Code § 12945.2(k))**

**Against All Defendants**

54. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

55. Under the CFRA, it is an unlawful employment practice, among other things, for any employer to refuse to hire, or to discharge, fine, suspend, expel, discriminate against, or harass an employee because of the employee's exercise of her right to family care and/or medical leave.

56. Plaintiff was eligible for medical leave because she was an employee of Defendants that worked at least 1,250 hours for Defendants during the previous twelve (12) months; and at the time Plaintiff began leave and was going to take leave, Plaintiff had taken no more than twelve (12) weeks of family care or medical leave in the preceding twelve-month period.

57. Defendants granted Plaintiff medical leave under CFRA and Plaintiff had informed Defendant that she would need further leave for her surgery.

58. In taking her medical leave described above, Plaintiff complied with all obligations under CFRA, and had the right to take such medical leave.

59. Shortly after Plaintiff notified Defendants that she would need to take further leave, Defendants discharged Plaintiff's employment.

60. Defendants' decision to terminate Plaintiff's employment, and to take other employment actions adverse to Plaintiff, was motivated by Plaintiff's serious health condition and her past and future medical leave.

61. Accordingly, in terminating Plaintiff's employment and taking other such unlawful actions as described herein, Defendants unlawfully discriminated against Plaintiff for previously exercising her right to take medical leave and preventing her from taking future leave, in violation of CFRA.

62. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, emotional and physical distress; and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Plaintiff is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Plaintiff, but exceed the jurisdictional limits of this Court. Plaintiff will prove such damages at trial.

63. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Plaintiff's rights, and with a malicious, wanton, and oppressive intent to cause injury to Plaintiff, which did in fact subject Plaintiff to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294 so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

//

## FIFTH CAUSE OF ACTION

### Gender Discrimination in Violation of FEHA

### (Gov. Code § 12940(a))

### Against All Defendants

64. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

65. The Fair Employment and Housing Act ("FEHA"), Government Code §§ 12900 et seq., prohibits employers from discriminating against employees on the basis of gender. See Government Code § 12940(a).

66. Under § 11030 of the FEHA, "gender identity" is defined as each person's internal understanding of their gender, or the perception of a person's gender identity, which may include male, female, a combination of male and female, neither male nor female, a gender different from the person's sex assigned at birth, or transgender.

67. Plaintiff was and is, at all relevant times, an "employee" of Defendants, within the meaning of the FEHA. See Government Code §§ 12926(c), §12940, 2 CCR § 11008(b).

68. Defendants were, at all relevant times, Plaintiff's "employer" as defined by Government Code § 12926(d), and subject to the FEHA's provisions.

69. At all relevant time periods, Plaintiff was a member of a protected class under FEHA. Ms. Appin is a 74-year-old transgender woman. Defendants were aware of Plaintiff's transgender status. Plaintiff's gender and transgender status was a substantial motivating factor in Defendants' decision to subject Ms. Appin to adverse actions, such as failure to promote and less favorable compensation and opportunities than lesser qualified, non-transgender individuals. Defendants' failure to promote and adequately compensate Ms. Appin because of her gender and transgender identity ultimately culminated in the Defendants' decision to terminate Ms. Appin's employment under the guise of "restructuring."

70. Accordingly, in taking the unlawful actions as described herein, Defendants intentionally discriminated against Plaintiff on the basis of her gender and/or had employment

practices and policies with a disproportionate effect on women, including but not limited to, in violation of the FEHA.

71. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial humiliation, depression, mental anguish, emotional and physical distress, and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Ms. Appin is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Ms. Appin but exceeds the jurisdictional limits of this Court. Ms. Appin will prove such damages at trial.

72. Defendants' conduct was a substantial factor in causing Ms. Appin's harm.

73. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Ms. Appin's rights, and with a malicious, wanton, and oppressive intent to cause injury to Ms. Appin, which did in fact subject Ms. Appin to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294, so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SIXTH CAUSE OF ACTION

### Retaliation in Violation of FEHA

### (Gov. Code § 12940(h))

### Against All Defendants

74. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

75. Government Code §§ 12900 et seq., prohibits employers from retaliating against employees for engaging in protected activity, including reporting unlawful conduct. See § 12940(h).

76. Ms. Appin was and is, at all relevant times, an "employee" of Defendants, within the meaning of the FEHA. See Government Code §§ 12926(c), §12940, 2 CCR § 11008(b).

77. Defendants were, at all relevant times, Ms. Appin's "employer" as defined by Government Code § 12926(d), and subject to the FEHA's provisions.

78. Ms. Appin complained, on several occasions, to Yanita Morris and Kunal Gullapalli, that she had not been treated fairly after the ION Group acquisition, specifically, with respect to her pay and bonuses. Not only did the Defendants ignore those complaints, but they also retaliated against Ms. Appin by terminating her after her final complaints of unfair treatment.

79. As detailed herein, Defendants retaliated against Ms. Appin for complaining about the unfair treatment against her as a 73-year-old transgender woman.

80. As a direct and proximate result of Defendants' unlawful retaliation against Ms. Appin, Ms. Appin has suffered and continues to suffer substantial humiliation, depression, mental anguish, emotional and physical distress, and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Ms. Appin is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Ms. Appin but exceeds the jurisdictional limits of this Court. Ms. Appin will prove such damages at trial.

81. Defendants' actions were a substantial factor in causing Ms. Appin harm.

82. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Ms. Appin's rights, and with a malicious, wanton, and oppressive intent to cause injury to Ms. Appin, which did in fact subject Ms. Appin to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294 so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SEVENTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### Against All Defendants

83. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

84. It is the public policy of the State of California that employers are prohibited from discriminating against an employee on the basis of a protected status. These public policies are embodied in, among other places, the Fair Employment and Housing Act and California Family Rights Act.

85. Here, Defendants unlawfully discriminated against Plaintiff based on her age, disability, gender, and medical leave, all of which have protected status. Thus, in terminating Plaintiff's employment, Defendants wrongfully terminated her in violation of public policy.

86. As a direct and proximate result of Defendants' unlawful discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial humiliation, mental anguish, emotional and physical distress; and the loss of past and future earnings, employment benefits, and opportunities. Accordingly, Plaintiff is entitled to compensatory damages. The exact amount and nature of such damages are presently unknown to Plaintiff but exceed the jurisdictional limits of this Court. Plaintiff will prove such damages at trial.

87. Defendants committed the despicable conduct described herein with a willful and conscious disregard of Plaintiff's rights, and with a malicious, wanton, and oppressive intent to cause injury to Plaintiff, which did in fact subject Plaintiff to cruel and unjust hardship. Defendants' actions therefore amount to "oppression, fraud, or malice" under Government Code § 3294 so as to warrant an award of punitive or exemplary damages in an amount sufficient to punish and make an example of Defendants.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## EIGHTH CAUSE OF ACTION

### Breach of Contract

### (Civ. Code § 1622)

### Against All Defendants

88. Plaintiff hereby incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

89. The Defendants are liable to Ms. Appin for its breach of the promise Mr. Matthews made on behalf of the Defendants to Ms. Appin, in consideration of her years of service, that the Defendants would "take care of" her.

90. A reasonable jury would infer, from Mr. Matthews' statement, that the Defendants would not prematurely fire her before she was ready to retire and would provide her with some benefit commensurate with her years of service and contributions to the Defendants. The Defendants' actions, prematurely and illegally firing her, do not come close to fulfilling the promise Mr. Matthews made to "take care of" Ms. Appin. The Defendants are bound by Mr. Matthews' promise to Ms. Appin.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For general damages according to proof;
2. For special damages according to proof:
3. For punitive damages;
4. For interest as allowed by law;
5. For costs of suit herein incurred, including attorneys' fees; and
6. For such other and further relief as the Court may deem proper.

Dated: March 14, 2024

**NICHOLS LAW, P.C.**
*Attorneys for Plaintiff*
Ricky L. Appin

By:_____
Sarah R. Nichols

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: March 14, 2024

**NICHOLS LAW, P.C.**
*Attorneys for Plaintiff*
Ricky L. Appin

By:_____
Sarah R. Nichols