ANNA R. BUONO (State Bar No. 232753)
    annabuono@dwt.com
GIANCARLO UREY (State Bar No. 267069)
    giancarlourey@dwt.com
NICHOLAS K. DOHERTY (*pro hac vice*)
    nicdoherty@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:     (213) 633-6800
Facsimile:     (213) 633-6899

Attorneys for Defendants
MERGERMARKET (U.S.) LTD., ION TRADING, INC.,
DEALOGIC, L.L.C., and MERGERMARKET LTD.

## IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| RICKY L. APPIN,<br><br>       Plaintiff,<br><br>    vs.<br><br>MERGERMARKET (U.S.) LTD., a New York Corporation, ION TRADING, INC., a New York Corporation, ACURIS INC., a Delaware Corporation, and DOES 110,<br><br>       Defendants. | Case No. 4:23-cv-03372-HSG<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**<br><br>Assigned to Hon. Haywood S. Gilliam, Jr.<br><br>Date:          December 12, 2024<br>Time:          2:00 p.m.<br>Courtroom:  2 (4th Floor)<br><br>State Court Action Filed:   April 7, 2023<br>Removed to Federal Court: July 6, 2023<br>Amended Complaint Filed: March 14, 2024<br>Trial Date:             March 10, 2025 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND STATEMENT OF ISSUES TO BE DECIDED ............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

I.    INTRODUCTION ........................................................................................................... 2

II.   STATEMENT OF FACTS ............................................................................................... 4

    A.    Mergermarket (U.S.) Ltd. and the Content Editing Team ....................................... 4

    B.    Mergermarket Supports Appin Through Her Gender Transition ............................. 6

    C.    Mergermarket is Acquired by ION Group ............................................................. 7

    D.    Mergermarket Supports Appin Following a Horse-Riding Injury .......................... 9

    E.    Mergermarket Eliminates Appin's Position as Part of a Years-Long Cost
        Saving Effort .................................................................................................... 10

    F.    Appin Never Complained of Age, Disability, or Gender-Based
        Discrimination or Mistreatment During Her Employment ..................................... 13

III.  LEGAL ARGUMENT ................................................................................................... 14

    A.    Appin's FEHA Discrimination Claims Fail as a Matter of Law (Claims Nos.
        1, 2, and 5) ...................................................................................................... 15

        1.    Appin's Discrimination Claims Fail Because Mergermarket
            Terminated Her Employment for a Legitimate, Non-Discriminatory
            Reason ....................................................................................................... 15

        2.    There is No Evidence of Pretext in Connection with Mergermarket's
            Termination of Appin's Employment ........................................................... 17

    B.    Appin's Retaliation Claims Fail Because She Was Terminated for a
        Legitimate Business Reason, and There Is No Evidence of Retaliatory
        Intent (Claims Nos. 4 and 6) ............................................................................. 20

    C.    Appin's CFRA Interference Claim Fails Because Appin Never Requested a
        Medical Leave of Absence (Claim No. 3) ........................................................... 22

    D.    Appin's Wrongful Termination Claim Fails Because It Is Premised on Her
        Deficient Discrimination and Retaliation Claims (Claim No. 7) ........................... 22

    E.    Appin's Breach of Contract Claim is Legally and Factually Baseless (Claim
        No. 8) .............................................................................................................. 23

    F.    Appin's Prayer for Punitive Damages Also Fails ................................................. 23

    G.    The Court Should Also Grant Summary Judgment In Favor of Dealogic,
        Mergermarket Ltd., and ION Trading, Inc. ........................................................ 24

IV.   CONCLUSION ............................................................................................................. 25

i

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*Ackerman v. W. Elec. Co., Inc.*,
   860 F.2d 1514 (9th Cir. 1988) ............................................................................................ 24

6

*Arteaga v. Brink's, Inc.*,
   163 Cal. App. 4th 327 (2008) ............................................................................................. 17

7

8

*Barton v. Elexsys Int'l., Inc.*,
   62 Cal. App. 4th 1182 (1998) ............................................................................................. 23

9

*Bradley v. Harcourt, Brace & Co.*,
   104 F.3d 267 (9th Cir. 1996) .............................................................................................. 17

10

11

*Capilli v. Finish Line, Inc.*,
   No. 15-cv-01158-HSG, 2018 WL 2047614 (N.D. Cal. May 2, 2018) ................................ 17

12

13

*Charles v. Nike, Inc.*,
   255 Fed. Appx. 127 (9th Cir. 2007) ................................................................................... 21

14

*Choochagi v. Barracuda Networks, Inc.*,
   60 Cal. App. 5th 444 (2020) ............................................................................................... 22

15

16

*Clutterham v. Coachmen Indus., Inc.*,
   169 Cal. App. 3d 1223 (1985) ............................................................................................ 16

17

*College Hosp. Inc. v. Super. Ct.*,
   8 Cal. 4th 704 (1994) ......................................................................................................... 24

18

19

*Collings v. Longview Fibre Co.*,
   63 F.3d 828 (9th Cir. 1995) ................................................................................................ 17

20

*Estes v. Monroe*,
   120 Cal. App. 4th 1347 (2004) ........................................................................................... 23

21

22

*Gaines v. SBC Commn's, Inc.*,
   313 Fed. Appx. 4 (9th Cir. 2008) ....................................................................................... 19

23

24

*Gonzalez v. Metpath, Inc.*,
   214 Cal. App. 3d 422 (1989) .............................................................................................. 16

25

*Guz v. Bechtel Nat'l Inc.*,
   24 Cal. 4th 317 (2000) ................................................................................................... 15, 17

26

27

*Hanson v. Lucky Stores Inc.*,
   74 Cal. App. 4th 215 (1999) ............................................................................................... 15

28

*Kelly v. Methodist Hosp. of S. Cal.*,
   22 Cal. 4th 1108 (2000) ................................................................................................ 24

*Lindsey v. United Airlines, Inc.*,
   No, C 17-00753 WHA, 2017 WL 2404911 (N.D. Cal. June 2, 2017) ..................................... 4

*Malmstrom v. Kaiser Aluminum & Chem. Corp.*,
   187 Cal. App. 3d 299 (1986) ........................................................................................ 16

*Martin v. Lockheed Missiles & Space Co.*,
   29 Cal. App. 4th 1718 (1994) ....................................................................................... 17

*Mayes v. Kaiser Found. Hosps.*,
   917 F. Supp. 2d 1074 (E.D. Cal. 2013) ........................................................................... 17

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) .................................................................................................... 15

*Miklosky v. Regents of Univ. of Cal.*,
   44 Cal. 4th 876 (2008) ................................................................................................ 25

*Mock v. Mich. Millers Mut. Ins. Co.*,
   4 Cal. App. 4th 306 (1992) .......................................................................................... 24

*Reyes v. San Francisco Unified School Dist.*,
   No. 11-4628 YGR, 2012 WL 4343784 (N.D. Cal. Sept. 20, 2012) ..................................... 20

*Scott v. Phoenix Sch.*,
   175 Cal. App. 4th 702 (2009) ....................................................................................... 24

*Serri v. Santa Clara University*,
   226 Cal. App. 4th 830 (2014) ....................................................................................... 19

*Sneddon v. ABF Freight Sys.*,
   489 F. Supp. 2d 1124 (S.D. Cal. 2007) ........................................................................... 23

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ...................................................................................... 15

*Wills v. Super. Ct.*,
   195 Cal. App. 4th 143 (2011) ....................................................................................... 15

*Zarco v. VWR Int'l, LLC*,
   No. 20-cv-00089-HSG, 2021 WL 1927528 (N.D. Cal. May 13, 2021) ......................... 15, 20

**Statutes**

29 U.S.C.
   § 1144 ...................................................................................................................... 19

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

California Civil Code
      § 3294 ................................................................................................................... 23, 24

California Government Code
      §§ 12900, *et seq.* (FEHA) ..................................................................... 1, 2, 14, 15, 17, 24
      §§ 12940 *et seq.* ..................................................................................................... 23, 24
      § 12945.2 (CFRA) ................................................................................................. *passim*

**Rules**

Federal Rules of Civil Procedure, Rule 56 ................................................................................... 1

**Regulations**

2 CCR § 11091 ....................................................................................................................... 22

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## NOTICE OF MOTION AND STATEMENT OF ISSUES TO BE DECIDED

TO THE COURT, PLAINTIFF RICKY L. APPIN, AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 12, 2024, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 2 on the 4th floor of the above-entitled Oakland Courthouse located at 1301 Clay Street, Oakland, CA 94612, defendants Mergermarket (U.S.) Ltd., Dealogic, L.L.C., and Mergermarket Ltd. (collectively "Defendants") will and hereby do move this Court (1) for an order of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to all of the claims asserted against Defendants in the First Amended Complaint ("FAC") filed by plaintiff Ricky L. Appin, or (2) in the alternative, for an order of summary adjudication as to any of the issues stated below.[1]

This Motion for Summary Judgment or, in the Alternative, Summary Adjudication (the "Motion") is made on the grounds that there is no triable issue as to any material fact for any claim set forth in the FAC against Defendants and, consequently, Defendants are entitled to judgment as a matter of law on the following issues:

Issue Nos. 1, 2, and 5: Should the Court grant summary judgment, dismissing Appin's first claim for age discrimination, second claim for disability discrimination, and fifth claim for gender discrimination—all allegedly in violation of the Fair Employment and Housing Act (the "FEHA")—because Appin's employment was terminated for a legitimate, non-discriminatory reason and there is no evidence to show discriminatory animus or pretext?

Issue No. 3: Should the Court grant summary judgment, dismissing Appin's third claim for interference with rights under the California Family Rights Act (the "CFRA") because she never requested or provided notice of her apparent need for CFRA leave and, even if she had, her employment was terminated for a legitimate, non-discriminatory reason?

Issue No. 4: Should the Court grant summary judgment, dismissing Appin's fourth claim for retaliation in violation of the CFRA because she never requested or provided notice of her need

---

[1] In the event that the Court decides to exercise jurisdiction over Specially-Appearing Defendant ION Trading, Inc., summary judgment in ION Trading's favor should also be granted for all of the reasons stated herein. Furthermore, because Acuris, Inc. merged into Mergermarket and no longer exists as a separate entity, the Court should dismiss all claims against Acuris, Inc.

1
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   for CFRA leave and, even if she had, her employment was terminated for a legitimate, non-

2   retaliatory reason?

3       Issue No. 6: Should the Court grant summary judgment, dismissing Appin's sixth claim for

4   retaliation in violation of the FEHA because Appin's employment was terminated for a legitimate,

5   non-retaliatory reason and there is no evidence to show retaliatory animus or pretext?

6       Issue No. 7: Should the Court grant summary judgment, dismissing Appin's seventh claim

7   for wrongful discharge in violation of public policy because it is completely derivative of her

8   baseless discrimination and retaliation claims?

9       Issue No. 8: Should the Court grant summary judgment, dismissing Appin's eighth claim

10  for breach of contract because Appin has failed to allege facts or provide evidence sufficient to

11  show that the alleged contract was formed or that the alleged condition precedent occurred?

12      Issue No. 9: Should the Court deny Appin's prayer for punitive damages because her

13  underlying claims fail and there is no evidence—much less clear and convincing evidence—that

14  an officer, director, or managing agent of Defendants engaged in oppression, fraud, or malice?

15      This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points

16  and Authorities, the Declarations of Khrystyna Kobryn (with Exhibits A through D), Yana Morris

17  (with Exhibits E through I), and Giancarlo Urey (with Exhibits 1 through 22), the Request for

18  Judicial Notice, all supporting evidence submitted concurrently herewith, all pleadings and records

19  on file, and upon such other evidence as may be presented in advance or at the hearing.

20  **MEMORANDUM OF POINTS AND AUTHORITIES**

21  **I.      INTRODUCTION**

22      Defendant Mergermarket (U.S.) Ltd. ("Mergermarket") is a financial intelligence firm that

23  provides its clients with rapid analysis of global corporate financial news, research, and data.

24  Plaintiff Ricky Appin worked for Mergermarket in various content editing roles from 2003 until

25  2022, when Mergermarket terminated her employment as part of a multi-year cost-reduction effort

26  that relocated content editing work to India, a lower-cost jurisdiction. Appin was one of ten U.S.-

27  based content editors whose positions were eliminated between 2019 and 2022.

28      Refusing to accept the legitimate business reason for her termination, Appin alleges that

2

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

Mergermarket's cost-saving efforts were mere pretext and that she was passed over for bonuses and pay increases and ultimately fired because of her age, putative disability, use of protected leave, and/or transgender status. Additionally, Appin asserts that Mergermarket retaliated against her for complaining about her compensation and breached an oral contract under which Mergermarket's former CEO allegedly promised Mergermarket would "take care of" her when she retired. Each of Appin's claims is subject to summary judgment.

***First***, Mergermarket terminated Appin's employment as part of a restructuring effort that eliminated all ten U.S.-based content-editorial positions, moving these functions to India. Notably, Appin's position was one of the last two eliminated. Since Appin's position was eliminated, Mergermarket has not hired Content Editors outside India. Mergermarket's decision was purely financial—it had nothing to do with Appin as an individual—and involved eliminating positions held by Content Editors who were cisgender, male, able-bodied, and younger than 40.

***Second***, there is no record of Appin ever complaining about or reporting any allegedly discriminatory comments or conduct related to her gender or transgender status while employed at Mergermarket. On the contrary, evidence shows Appin told multiple people she felt supported and accepted by her coworkers during and after her transition. Though not legally obligated to do so, Mergermarket even modified the health insurance it offers employees to cover Appin's transition-related medical expenses. It is undisputed that Appin never reported any age or disability-related mistreatment to her supervisor or Mergermarket Human Resources.

***Third***, Mergermarket allowed Appin to take time off as needed for her gender transition and following a January 2022 horse-riding injury, which is the sole basis for her disability discrimination claim. Appin cannot identify a single instance where Mergermarket denied her medical leave or prevented her from taking time off for medical issues. Instead of submitting a request as required under Mergermarket policy, when Appin needed time off, she would "simply update [her] team about [her] need to be away from [her] desk."

***Fourth***, the alleged comment that Mergermarket would "take care of" Appin upon her retirement is too vague and indefinite to establish a contract or modify the at-will nature of Appin's employment. In any case, Appin never retired.

3

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

***Fifth***, in the unlikely event the Court concludes that a triable issue exists as to any of Appin's claims, the Court should nevertheless summarily adjudicate Appin's prayer for punitive damages in favor of Mergermarket. Indeed, Appin's own deposition testimony establishes that she was never subjected to oppression, fraud, or malice.

***Finally***, Appin's claims against Dealogic, L.L.C. ("Dealogic"), Mergermarket Ltd., and Specially Appearing Defendant ION Trading, Inc. ("ION Trading")—three entities that never employed Appin—are based on the same faulty allegations against Mergermarket. The Court should enter judgment in favor of Dealogic, Mergermarket Ltd., and ION Trading.[2]

In summary, Appin's claims stem from her disagreement with Mergermarket's legitimate business decision to reduce costs by eliminating U.S.-based content editing positions. But the law is clear: this Court cannot second-guess Mergermarket's business judgment absent compelling evidence of pretext or discriminatory or retaliatory intent. No such evidence exists. The Court should grant the instant motion and enter judgment in favor of Mergermarket, Dealogic, Mergermarket Ltd., and ION Trading[3] and against Appin.

## II.    STATEMENT OF FACTS

### A.    Mergermarket (U.S.) Ltd. and the Content Editing Team

Mergermarket is a financial intelligence and data firm that provides its clients with analysis of global corporate financial news and data to help them identify potential mergers and acquisitions opportunities, deals, and market trends. Each day, Mergermarket's global team of journalists, lawyers, and subject-matter experts produce hundreds of stories, insights, and alerts about market developments, companies, and deals. Mergermarket's Content Editors are responsible for ensuring all content is error free, easy to understand, and compliant with applicable regulations before publication.[4]

---

[2] The Court has not yet ruled on ION Trading's pending motion to dismiss for lack of personal jurisdiction. If the Court were to exercise jurisdiction, summary judgment in ION Trading's favor should also be granted.

[3] Appin named Acuris Inc. as a defendant in her First Amended Complaint. *See* Dkt. 51 [FAC] at ¶ 17. As Plaintiff knows, however, Acuris Inc. merged with and into Mergermarket. *See* Request for Judicial Notice, Ex. 1.  Acuris Inc., therefore, is not a proper party to this action.  *See cf. Lindsey v. United Airlines, Inc.*, No, C 17-00753 WHA, 2017 WL 2404911, at *5 (N.D. Cal. June 2, 2017).

[4] *See* Ex. 2 [Appin Depo.] at 64:12-65:5. Numbered exhibits (1 through 22) are attached to the declaration of Giancarlo Urey.

---

4

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Mergermarket hired Appin as an at-will employee in 2003, when she was 54 years old.[5] At that time, she identified as a gay male who went by the name Rick.[6] Appin was the company's first full-time Content Editor and eventually became Global Head of Content Editing, reporting directly to founder and then Editor-in-Chief Charlie Welsh.[7] In this role, Appin not only edited content but was also responsible for training and overseeing Mergermarket's other Content Editors and creating the company's content style guide.[8] At one point, Appin supervised as many as 35 Content Editors working in Mergermarket offices around the world.[9] Eventually, as the company grew, Content Editors were divided into two teams based on the type of content they edited—namely, "Equities" or "Fixed Income."[10] Appin led the Fixed Income group, which she described as handling "much more complex" and "more challenging," content.[11]  Mergermarket also hired Content Editors in India specifically to edit curated information (*e.g.*, corporate press releases), which allowed editors in higher-cost jurisdictions, including those on Appin's team, to focus on editing Mergermarket's original content.[12]

In addition to her duties as the Global Head of Content Editing-Fixed Income, Appin handled various "operations and logistics" tasks, including approving invoices for office expenses and assisting with the opening of new Mergermarket offices.[13] Mergermarket awarded Appin a second discretionary bonus each year as recognition for this additional work.[14] Appin alleges that Mergermarket's leadership was "so grateful for [her] contributions" that sometime in 2018, then-CEO Hamilton Matthews promised Mergermarket would "take care of" her when she retired.[15]

---

[5] *See id.* at 63:22-24.

[6] *See id.* at 179:10-12; Declaration of Khrystyna Kobryn ("Kobryn Decl.") Ex. A [Offer Letter]; Declaration of Yana Morris ("Morris Decl.") at ¶ 2.

[7] *See* Ex. 2 [Appin Depo.] at 63:17-64:10, 65:6-66:1.

[8] *See id.* at 66:2-12.

[9] *See id.* at 70:25-71:9.

[10] *See id.* at 77:1-78:6.

[11] *See id.* at 79:12-80:6.

[12] *See id.* at 132:9-25.

[13] *See id.* at 82:10-84:1. In Appin's 2011 performance review, Welsh said that with respect to Appin's operations duties "[Appin] complains that these duties are not recognized and rewarded but I have limited visibility on what exactly they are, who [she] reports to in relation to them, and how [her] performance of said duties is measured." Kobryn Decl. Ex. B [Perf. Review] at p. 2.

[14] Morris Decl. at ¶ 6.

[15] Dkt. 51 [FAC] at ¶ 6.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Appin apparently interpreted this as assurance that she would "be given some sort of special bonus or a goodly amount of money in retirement" even though she admits Matthews explicitly said he could not promise her a specific amount.[16]

## B.    Mergermarket Supports Appin Through Her Gender Transition

Appin informed individuals at Mergermarket of her transgender status in 2016, and underwent gender confirmation surgery on January 9, 2019.[17] It is undisputed that Mergermarket provided Appin with time off as needed for both her surgery and her recovery.[18] As Appin readily admitted at deposition, Appin's colleagues were supportive and respectful of her transition. Several, including Chief Content Officer Yana Morris, offered to help take care of Appin while she was recovering from her gender confirmation surgery.[19] The day Appin returned to work after her surgery, Morris met her in the lobby so they could walk in together and Morris could reintroduce Appin to her colleagues as "Ricky."[20] Others coworkers purchased Appin a Gucci belt to help celebrate her transition.[21]

Appin's communications at the time reflect the overwhelming support she received at Mergermarket:

- "Pete, Yana, Gio Slon, Katz and most everyone else have offered to help. I'm very, very blessed."[22]

- "I've been at Mergermarket for 16 years and I've always been totally open. In fact, it came as absolutely zero surprise to all of my friends and colleagues, including the CEO who is my dear friend (we were friends before he became CEO) and our CFO. They wanted to throw a party!"[23]

- "And it was easy at work since I know most of the 1,700 people—I have a high profile because I travel to all our offices globally. Everyone was thrilled. . . ."[24]

---

[16] Ex. 2 [Appin Depo.] at 139:12-141:1 (Appin acknowledging that Matthews said "I can't promise you how much," or something to that effect, at the time he made the statement).

[17] Ex. 3 [Mar. 26, 2019, Email Chain].

[18] *See* Ex. 2 [Appin Depo.] at 149:23-150:4.

[19] *See* Ex. 4 [Jan. 4, 2019, Email]; *see also* Ex. 2 [Appin Depo.] at 149:17-151:19 (Appin acknowledging that she "felt supported").

[20] *See* Ex. 2 [Appin Depo.] at 195:6-13.

[21] *See id.* at 196:17-197:3 (Appin testifying that she received a belt while complaining that it "didn't fit"); *see also* Ex. 5 [Morris Depo.] at 241:2-242:10.

[22] Ex. 4 [Jan. 4, 2019, Email].

[23] Ex. 3 [Mar. 26, 2019, Email Chain]; *see also* Ex. 2 [Appin Depo.] at 195:1-5 (Appin admitting that Matthews' support "was well-intended").

[24] Ex. 6 [May 22, 2020, Email Chain]; *see also* Ex. 2 [Appin Depo.] at 199:6-16.

6

1   Appin's transgender identity was "celebrated, loved, [and] supported" by her coworkers.[25] In

2   fact, the environment at Mergermarket was so supportive that Appin apparently felt comfortable

3   sharing intimate details about her transition process with her coworkers. Approximately one month

4   after her gender confirmation surgery, for example, Appin sent an email to Human Resources

5   Director Mark Seber in which she stated "*[j]ust wanted to personally let you know that I have the*

6   *prettiest vajayjay in the world*."[26] In another email to Seber, Appin asked for more time to complete

7   Mergermarket's mandatory Harassment Prevention Training, explaining "*I have a dilator in my*

8   *vadge right now, lol . . . I don't even have a laptop here*."[27] Appin testified that she felt comfortable

9   sharing this information with Seber because he had been supportive of her transition.[28]

10   Despite this support, Appin now claims she felt she was perceived as a "silly, you know,

11   60-something-year-old, you know, transgender woman."[29] This feeling was apparently based on

12   nothing more than Appin's "intuition," and bafflingly, Morris introducing her to an executive

13   during an annual holiday party.[30] Appin cannot point to any evidence—and has not produced any

14   facts—to support her effort to rewrite history in support of her claims. It is undisputed that she

15   never reported any discrimination or mistreatment related to her transgender status during her time

16   at Mergermarket.[31]

## C.    Mergermarket is Acquired by ION Group

18   In July 2019, Mergermarket was acquired by the ION Group.[32] Following the acquisition,

19   Mergermarket implemented various cost-saving measures, including reducing overall headcount

20   through significant layoffs. Appin knew of these layoffs, as she was involved with notifying

21   affected members of her team.[33] Remarking on these layoffs in an email to Morris (her skip-level

---

[25] Ex. 2 [Appin Depo.] at 151:7-19; *see also* Ex. 5 [Morris Depo.] at 241:2-242:10.

[26] Ex. 7 [Jan. 11, 2019, Email Chain]; *see also* Ex. 8 [Seber Depo.] at 116:18-117:5.

[27] Ex. 9 [Feb. 5, 2019, Email Chain] at p. 1.

[28] Ex. 2 [Appin Depo.] at 161:18-162:7.

[29] *Id.* at 151:7-19.

[30] *Id.* at 151:25-153:20.

[31] *See id.* at 128:3-16.

[32] *See* Ex. 5 [Morris Depo.] at 68:12-18; *see also* Ex. 2 [Appin Depo.] at 143:20-144:9. As part of the acquisition transaction, Appin received approximately $100,000 to $125,000 for her own interest in the company.

[33] *See* Ex. 8 [Seber Depo.] at 54:24-55:8.

7

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

supervisor), Appin explained "It's business, it's life, nothing much that can be done."[34] As a result of the layoffs, Appin's team was reduced to "three or four" Content Editors.[35]

ION Group also sought to reduce costs by consolidating Mergermarket's administrative functions (*e.g.*, payroll, sales, human resources) with those of other ION Group entities. As part of this consolidation, the "operations and logistics" duties Appin had previously performed were reassigned to a centralized facilities management team.[36] Over the following months, Appin continued to provide limited input on operational matters she had been involved with prior to the acquisition, but doing so took up less and less of her time.[37] Nevertheless, in March 2020, Mergermarket awarded Appin a $10,000 bonus for the minimal operations work she had performed over the past year.[38] Morris personally advocated that Appin be awarded this additional bonus on top of the bonus she had already received for her content editing work.[39] After 2020, Appin only received a discretionary bonus for her content editing work.[40]

Another aspect of the consolidation was the transition of Mergermarket employees to the ION Group's health insurance plan. Unlike the health insurance plan previously available to Mergermarket employees, the ION Group's health insurance plan did not cover expenses related to gender confirmation procedures.[41] In late 2020, Appin reached out to Morris, Seber, and ION Group's U.S. Benefits team to complain that the ION Group's medical benefits would not cover the costs associated with a surgical "revision" of the gender confirmation surgery she received in January 2019.[42] A member of the U.S. Benefits team promptly responded to Appin's email and said "let us look into this."[43] Over the following weeks, Mergermarket worked to ensure that coverage for gender confirmation procedures was added to the ION Group's health insurance

---

[34] Morris Decl. Ex. F [July 19, 2019, Email Chain]**.**
[35] Ex. 2 [Appin Depo.] at 72:11-20.
[36] *See id.* at 91:11-24.
[37] *See id.* at 92:12-25.
[38] *See* Morris Decl. at ¶ 6.
[39] *Id.* at ¶ 6, Ex. G [Mar. 25, 2020, Email Chain] at p. 1.
[40] *See* Kobryn Decl. at ¶ 3.
[41] Ex. 2 [Appin Depo.] at 148:24-149:3; Ex. 10 [Sept. 25, 2020, Email Chain].
[42] Ex. 2 [Appin Depo.] at 197:10-18; Ex. 11 [Dec. 22, 2020, Email Chain] at pp. 3-4.
[43] Ex. 11 [Dec. 22, 2020, Email Chain] at p. 3.

8

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

plan.[44] On December 22, 2020, the U.S. Benefits team notified Appin that ION Group had approved "Transgender Services" as a covered expense on the company's health insurance plan with a lifetime maximum benefit of $75,000.[45] Appin responded "This is brilliant news! Best Christmas gift ever, many thanks! Have a great holiday and again thank you indeed for your efforts on my behalf, hugely appreciated."[46] Nevertheless, Appin continued to complain that her preferred provider was out-of-network and therefore not covered by the ION Group's insurance. The U.S. Benefits team worked diligently to identify a solution so that Appin's revision surgery would be covered. Appin's preferred provider refused to join the insurance carrier's network, but the carrier was eventually able to negotiate a discounted price for Appin's procedure.[47]

### D.    Mergermarket Supports Appin Following a Horse-Riding Injury

In January 2022, Appin fractured her leg in a horse-riding accident and subsequently required multiple surgeries. It is undisputed that no one at Mergermarket ever told Appin that she could not take time off following her leg injury or surgeries.[48] Appin, who worked remotely, never submitted any formal request for time off, medical leave, or any other accommodation related to her leg injury or surgery.[49] Instead, any time Appin needed to take time off related to her leg injury, she would simply notify her team that she was going to be unavailable.[50] For example, on August 23, 2022, Appin sent two members of her team an email letting them know that she was scheduled to undergo surgery on her leg on August 29, and would need to miss work on August 26 for pre-op appointments.[51] Appin said she would return to work following her appointment even though "there's nothing to edit . . . not enough work to go around with the already gazillion India CEs we have."[52] Notably, Appin did not include her direct supervisor at the time, Romil Timbadia, or Morris, or anyone in a people-management or executive role on her email.

---

[44] Ex. 2 [Appin Depo.] at 203:13-205:4; Ex. 5 [Morris Depo.] at 173:2-9.
[45] Ex. 11 [Dec. 22, 2020, Email Chain] at p. 1.
[46] *Id.*
[47] *See* Ex. 2 [Appin Depo.] at 206:19-207:2.
[48] *See id.* at 226:10-228:15.
[49] *See id.* at 223:11-224:16.
[50] *See id.* at 230:19-231:3.
[51] Ex. 12 [Aug. 23, 2022, Email].
[52] *Id.*

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

E.    **Mergermarket Eliminates Appin's Position as Part of a Years-Long Cost Saving Effort**

In late 2018, Mergermarket initiated a review of its content editing operations with the aim of identifying ways to increase efficiency while maintaining effectiveness and high quality standards.[53] The review determined that Mergermarket could save money while improving editorial support by moving additional content editing functions to India.[54] In 2018, the average salary of a Mergermarket Content Editor in India was $14,049 (USD), while the average salary for U.S.-based Content Editors in 2018 was $90,540.[55] Notably, Appin's total compensation for 2018 was $206,300—nearly *15 times* the average salary for Content Editors in India.[56] The lower salaries demanded by Content Editors in India would allow Mergermarket to hire more Content Editors at a significantly lower cost, thereby increasing the Content Editing team's availability and efficiency all while saving the company money.[57]

Based on this review, in early 2019 Mergermarket implemented "Project Zara," a two-phase plan to centralize Mergermarket's content editing functions in India.[58] At the time, Mergermarket employed ten Content Editors in the United States—five in the Fixed Income group led by Appin, and five in the Equities group, which was led by Mouparna Bandyopadhyay.[59] Bandyopadhyay, who was based in Hong Kong at the time, also oversaw Mergermarket's Content Editing team in India.[60] During Project Zara's first phase, Bandyopadhyay recruited and hired additional Content Editors in India to take over responsibility for editing Equities content.[61] Once the India-based team was up and running, Mergermarket eliminated all five U.S.-based Equities Content Editor roles.[62] Transitioning Equities content to India first allowed the new India-based

---

[53] Morris Decl. at ¶ 3, Ex. E [April 23, 2019, Email Chain].

[54] Morris Decl. at ¶ 3.

[55] *See* Ex. 13 [Bandyopadhyay Depo.] at 125:4-9; *see also* Kobryn Decl. at ¶ 3.

[56] *See* Kobryn Decl. at ¶ 8, Ex. D [Oct. 5, 2021, Email].

[57] *See* Ex. 8 [Seber Depo.] at 66:11-20.

[58] *See* Ex. 5 [Morris Depo.] at 59:12-25.  Mergermarket always planned to move Fixed Income content editing functions to India as part of Project Zara.  *See id.* at 243:4-244:8.

[59] *See* Ex. 13 [Bandyopadhyay Depo.] at 9:23-10:10, 27:4-19, 143:22-144:2.

[60] *See id.* at 9:23-10:10.

[61] *See id.* at 36:5-37:4.

[62] *See id.* at 143:22-144:2; Morris Decl. Ex. E [April 23, 2019, Email Chain].

10

Content Editors to gain experience while the remaining U.S.-based Content Editors provided oversight and continued editing the more complex Fixed Income content.[63] Later that year, Mergermarket eliminated the distinction between the Equities and Fixed Income Content Editors. Thereafter, India-based Content Editors were handling the same types of content as the remaining U.S.-based Content Editors, including Appin.[64] Mergermarket quickly determined that moving the Equities editing function to India had resulted in cost savings, increased efficiency, and fewer complaints about editing mistakes.[65]

Over the next year, the India-based Content Editors gained experience and it became clear that Mergermarket had more Content Editors than it needed.[66] In August 2021, Appin complained that she was one of eight Content Editors on duty and there was no content to edit.[67] Appin opined that having so many Content Editors was "a waste of time and money."[68] In an email to Morris two months later, Appin again noted that the volume of content needing to be edited had "fallen precipitously" and that "there is absolutely no reason to waste time and money hiring additional [Content Editors], *despite the low costs involved in hiring in India* as there is not enough volume for the current headcount to process."[69]

In response to this overcapacity, and in recognition of the savings associated with moving content editing functions to India, Mergermarket stopped filling Content Editing positions in the United States when they became vacant.[70] Between 2019 and 2020, the number of Content Editors on Appin's team went from seven to four.[71] As the number of employees she supervised decreased, Appin devoted less time to supervisory duties and more time to editing content.[72] By

---

[63] *See* Ex. 5 [Morris Depo.] at 59:12-25; *see also* Morris Decl. Ex. E [April 23, 2019, Email Chain].

[64] *See* Ex. 2 [Appin Depo.] at 80:21-81:9; *see also* Ex. 13 [Bandyopadhyay Depo.] at 39:10-40:7.

[65] *See* Ex. 13 [Bandyopadhyay Depo.] at 86:7-25, 89:22-90:4; Ex. 14 [Feb. 4, 2020, Email] at pp. 15, 20.

[66] *See* Ex. 15 [Oct. 29, 2021, Email]; *see also* Ex. 1 [Appin Depo.] at 221:14-222:20.

[67] Ex. 16 [Aug. 5, 2021, Email Chain] at p. 1.

[68] *Id.* at p. 2.

[69] Ex. 15 [Oct. 29, 2021, Email].

[70] *See* Ex. 13 [Bandyopadhyay Depo.] at 145:15-22.

[71] *See* Ex. 2 [Appin Depo.] at 72:8-20; *see also* Ex. 13 [Bandyopadhyay Depo.] at 154:11-17; Ex. 17 [Bandyopadhyay Depo. Ex. 19] at 1-2.

[72] *See* Ex. 2 [Appin Depo.] at 75:3-7.

2021, Appin's job duties were "basically the same" as any other Content Editor at Mergermarket—including those in India.[73] Nevertheless, Mergermarket continued to pay Appin more than twice as much as the next highest paid Content Editor (who was also U.S.-based).[74] During her deposition, Appin was unable to identify any Mergermarket employee who performed comparable duties but was paid more than she was.[75]

By 2022, Mergermarket only employed two Content Editors in the United States: Appin and Hal Stucker, a cisgender man.[76] At that time, Appin and Stucker were the highest paid Content Editors at Mergermarket, with annual salaries of $201,100 and $86,075 respectively.[77] That year, Mergermarket made the decision to move forward with the second phase of Project Zara and eliminate the remaining Content Editor roles in the United States.[78]

On September 14, 2022, Morris traveled from New York to San Francisco to meet with Appin in person and let her know Mergermarket was terminating her employment. Morris' notes of her meeting with Appin reflect that Appin said she understood the business justification for Mergermarket's decision, and that it was an "expected outcome" following phase one of Project Zara.[79] Appin also expressed interest in applying for other positions at Mergermarket that matched her skill set and compensation, although she did not ultimately apply for the positions she and Morris discussed.[80] Nevertheless, during the meeting, Appin repeatedly threatened to sue Mergermarket unless she was offered a significantly higher severance payment.[81] Appin specifically proposed $1,000,000 as a potential severance amount but "admitted [it was] likely

---

[73] *See id.* at 75:8-20; Ex. 13 [Bandyopadhyay Depo.] at 116:25-117:17 (By 2021, India-based Content Editors "who had completed more than three years were editing most of the content anyway, by 'most of the content,' I mean across all products.").

[74] *See* Kobryn Decl. at ¶ 3.

[75] *See* Ex. 2 [Appin Depo.] at 246:14-20.

[76] *See id.* at 72:21-73:7; Morris Decl. at ¶ 8.

[77] *See* Kobryn Decl. at ¶ 3.

[78] *See* Ex. 13 [Bandyopadhyay Depo.] at 171:21-172:20.

[79] *See* Morris Decl. Ex. I [Sept. 14, 2022, Email]; *see also* Ex. 2 [Appin Depo.] at 234:1-238:6 (Appin testifying that Morris' notes largely accurately reflect what Appin and Morris discussed during the termination meeting).

[80] *See* Morris Decl. Ex. I [Sept. 14, 2022, Email]; *see also* Ex. 2 [Appin Depo.] at 241:22-242:15.

[81] *See* Morris Decl. Ex. I [Sept. 14, 2022, Email].

12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

unrealistic."[82] Mergermarket terminated Stucker's employment that same day.[83] After Appin and Stucker were let go, Mergermarket did not employ any Content Editors in the United States.[84] Since September 2022, Mergermarket has only hired Content Editors in India.[85]

Appin apparently underwent another surgery on her leg in September 2022, shortly after Mergermarket terminated her employment. Appin had not informed anyone at the company that the surgery had been scheduled and never requested time off or a medical leave of absence related to the September 2022 surgery.[86] Under Mergermarket's medical leave policy, employees were required to provide 30-days' notice prior to taking foreseeable medical leave, including leave related to "planned medical treatment."[87] It is undisputed that Appin never provided any such notice or otherwise requested a medical leave of absence in anticipation of her September 2022 surgery, and that she did not require any other accommodation related to her leg injury.[88]

## F.    Appin Never Complained of Age, Disability, or Gender-Based Discrimination or Mistreatment During Her Employment

Appin never reported any negative or derogatory comments or other mistreatment related to her age, putative disability, or transgender status during her employment at Mergermarket. During her deposition, Appin testified that her coworkers would comment that she "obviously" did not look her age, or would wish her "happy 30th birthday or happy 21st birthday, that sort of thing," but could not recall any specific comments about her age during her time at Mergermarket.[89] Far from finding these comments upsetting, Appin would make similar comments about herself—"Q: You would tell people you were celebrating your 21st birthday and

---

[82] *Id.*

[83] *See* Ex. 5 [Morris Depo.] at 135:22-136:7.

[84] *See id.* at 142:19-24.

[85] *See id.* at 144:4-14.

[86] *See* Kobryn Decl. at ¶ 4; *see also* Morris Decl. at ¶ 9.

[87] Kobryn Decl. Ex. C [Employee Handbook] at p. 23 ("You must provide at least 30 days['] notice, ordinarily in writing, prior to taking a family or medical leave when the leave is foreseeable, such as for . . . planned medical treatment for a serious health condition. . . .").

[88] *See* Ex. 2 [Appin Depo.] at 224:13-225:1.

[89] *Id.* at 232:23-233:25.

13

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  -- you did that, right?  A: Exactly."[90] It is undisputed that Appin never reported any age-related

2  mistreatment to Mergermarket human resources during her employment.[91]

3      It is similarly undisputed that Appin never reported any derogatory comments or

4  mistreatment related to her January 2022 leg injury.[92] During her deposition, the only

5  "derogatory" comment about her alleged disability that Appin could identify was a February 8,

6  2022, Teams message Seber sent her after she told him about her injury in which he said "oh I'm

7  so sorry to hear that. It seems like you have a health issue every year like clockwork."[93] Seber,

8  who Appin had previously told she had "the prettiest vajayjay in the world," intended for the

9  message to be lighthearted and ended the message with an emoji smiley face with its tongue

10 sticking out.[94]  Appin responded to Seber as follows: "hahahaha!!!!!!!!!!!!!!  that's because i'm a

11 very active woman!"[95]

12      Finally, as explained above, Mergermarket went to great lengths to support Appin's gender

13 transition—including changing the health insurance it provides employees—and to make her feel

14 comfortable and welcome at work. Appin never reported any mistreatment related to her

15 transgender status during her employment at Mergermarket.[96]

16                    **III.    LEGAL ARGUMENT**

17      In her First Amended Complaint, Appin asserts eight claims against Defendants: (1) age

18 discrimination in violation of the Fair Employment and Housing Act (the "FEHA"), (2) disability

19 discrimination in violation of the FEHA, (3) interference with rights under the California Family

20 Rights Act (the "CFRA"), (4) retaliation in violation of the CFRA, (5) gender discrimination in

21 violation of the FEHA, (6) retaliation in violation of the FEHA, (7) wrongful termination in

22 ───────────────

23 [90] *Id.* at 232:11-14.

   [91] *See id.* at 124:13-21, 127:8-25 (Appin explaining that the last time she complained of
24 Mergermarket preferring younger workers was in connection with a colleague's lawsuit that was
   filed in 2008).

25 [92] *See id.* at 128:17-129:1, 129:17-22.

   [93] *Id.* at 129:2-16.

26 [94] Ex. 18 [Teams Chat]; *see also* Ex. 8 [Seber Depo.] at 145:8-16; Ex. 2 [Appin Depo.] at 164:23-
27 165:1 (Q: "Now, at the time you received this message from Seber on February 8, 2022, did you
   understand that he was joking?" A: "Well, he has a face with a tongue hanging out.").

   [95] Ex. 18 [Teams Chat].
28 [96] *See* Ex. 2 [Appin Depo.] at 128:3-16.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

violation of public policy, and (8) breach of contract.[97]  The undisputed facts demonstrate that no triable issue exists as to any of her claims.

**A.  Appin's FEHA Discrimination Claims Fail as a Matter of Law (Claims Nos. 1, 2, and 5)**

"When analyzing disparate treatment claims under [the] FEHA, California courts use the three-stage burden shifting test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Zarco v. VWR Int'l, LLC*, No. 20-cv-00089-HSG, 2021 WL 1927528, at *4 (N.D. Cal. May 13, 2021). "Under that framework, the plaintiff must first establish a prima facie case of discrimination; the burden then shifts to the employer to show a 'legitimate, nondiscriminatory reason' for the adverse employment action; and finally the burden shifts back to the plaintiff to prove that the employer's asserted reasons for the action are pretextual." *Id.* (citing *Hanson v. Lucky Stores Inc.*, 74 Cal. App. 4th 215, 224 (1999)).

To establish a prima facie case of discrimination, Appin must show, at a minimum, that a causal connection existed between the protected characteristics at issue and her employment termination. *See Zarco*, 2021 WL 1927528, at *3. Here, Appin cannot establish this basic element of a prima facie case of discrimination. But even if she could, Appin's discrimination claims still fail because Mergermarket terminated her employment for a legitimate, nondiscriminatory reason, and there is no evidence of pretext.

**1.  Appin's Discrimination Claims Fail Because Mergermarket Terminated Her Employment for a Legitimate, Non-Discriminatory Reason**

"Legitimate" reasons for adverse employment actions are simply "reasons that are ***facially unrelated to prohibited bias***, and which, if true, would thus preclude a finding of discrimination" or retaliation. *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 357 (2000); *see also Zarco*, 2021 WL 1927528, at *6 (same). There can be no liability as long as the employer's reasons for the discharge or adverse employment actions are honestly believed and non-discriminatory on their face, even if "foolish or trivial or even baseless." *Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 171 (2011) (*citing Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002)); *see also Guz*, 24 Cal. 4th at 357 ("[T]he ultimate issue is simply whether the employer acted with a *motive*

---

[97] *See generally* Dkt. 51 [FAC].

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

Davis Wright Tremaine LLP
865 S. FIGUEROA ST. SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

to discriminate illegally."). California courts have repeatedly held that reductions in force not only constitute a legitimate, nondiscriminatory reason for an employment termination, but that reductions in force establish good cause for termination. So long as a "fair and honest cause or reason" is provided for the reduction in force, good cause exists for an employee's employment termination. *Malmstrom v. Kaiser Aluminum & Chem. Corp.*, 187 Cal. App. 3d 299, 320 (1986) (business reasons for reduction in force constituted a "fair and honest" reason to terminate plaintiff's employment).

In *Malmstrom*, the plaintiff relocated from California to Florida to continue working for the defendant. *See id*. at 308-09. Even though the plaintiff testified that he had received assurances prior to his relocation that his would be a "permanent position" and continue as long as he performed his work satisfactorily, the plaintiff lost his position in Florida due to a reduction in force less than a year after he moved to Florida. *Id*. at 308-11. In affirming the trial court's grant of summary judgment, the California Court of Appeal held that evidence of the economic considerations that prompted the reduction in force constituted good cause for the plaintiff's employment termination. *See id*. at 320.

Likewise, in *Clutterham v. Coachmen Indus., Inc.*, 169 Cal. App. 3d 1223, 1226 (1985), the California Court of Appeal affirmed the trial court's grant of summary judgment in a wrongful termination case, explaining that the employer's decision to reorganize its operations, which led to the plaintiff's position being eliminated, constituted "good cause" for termination of the plaintiff's employment and noting that "*[c]ourts must take care not to interfere with the legitimate exercise of managerial discretion*." *Id*. (emphasis added).

Under the standard delineated in *Malmstrom* and *Clutterham*, Mergermarket's termination of Appin's employment constitutes a legitimate, nondiscriminatory business decision. As in *Malmstrom* and *Clutterham*, the termination decision at issue here was a financial one. Mergermarket made the decision to eliminate U.S.-based Content Editor positions so that the company could take advantage of the lower costs associated with hiring Content Editors in India. The decision had nothing to do with Appin's age, gender, or putative disability—it was about Mergermarket's bottom line. *See, e.g.*, *Gonzalez v. Metpath, Inc.*, 214 Cal. App. 3d 422, 427

16

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  (1989) ("Employers must be given wide latitude to make independent, good-faith personnel

2  decisions without the threat of a jury second-guessing their business judgments.").

3          **2.**       **There is No Evidence of Pretext in Connection with Mergermarket's**

4                     **Termination of Appin's Employment**

5       In light of Mergermarket's legitimate business decision to eliminate U.S.-based Content

6  Editor roles, Appin has the burden of producing specific, substantial evidence of pretext in order

7  to survive summary judgment on her discrimination claims. *Guz*, 24 Cal. 4th at 354-58; *Martin v.*

8  *Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718, 1734 (1994); *Arteaga v. Brink's, Inc.*, 163

9  Cal. App. 4th 327, 344 (2008) (relevant question is "whether the given reason was a pretext for

10  illegal discrimination."). "Indirect evidence of pretext must be ***specific*** and ***substantial*** in order to

11  create a triable issue with respect to whether the employer intended to discriminate. . . ." *Capilli v.*

12  *Finish Line, Inc.*, No. 15-cv-01158-HSG, 2018 WL 2047614, at *7 (N.D. Cal. May 2, 2018)

13  (internal quotation marks and citation omitted); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267,

14  270 (9th Cir. 1996) ("To avoid summary judgment, Bradley 'must do more than establish a prima

15  facie case. . . .'  She must produce specific, substantial evidence of pretext."); *Collings v.*

16  *Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (same).

17       Appin cannot make this showing because she has no direct, circumstantial, or statistical

18  evidence that suggests Mergermarket's decision to eliminate all U.S.-based Content Editor

19  positions was motivated by anything other than a desire to reduce personnel costs. *See Mayes v.*

20  *Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1079-80 (E.D. Cal. 2013) (dismissing FEHA claim

21  where plaintiff provided "no meaningful detail suggesting the termination was because of his race

22  or sex"). It is undisputed that Mergermarket's India-based content editors were performing

23  "basically the same" work as the company's U.S.-based Content Editors (Appin and Stucker), but

24  at a significantly lower cost.[98] As the individuals involved with Project Zara have all testified, the

25  decision to move content editing functions to India was a financial one.[99] Mergermarket pays its

---

26  [98] Ex. 2 [Appin Depo.] at 75:8-20, 222:21-25 (Q: "And it is true that you learned during your
27  employment that the -- that India [Content Editors] were much more affordable or cheaper than
[C]ontent [E]ditors in other jurisdictions, like the United States, right?" A: "Yes.").

28  [99] Ex. 5 [Morris Depo.] at 45:24-46:11; Ex. 8 [Seber Depo.] at 66:11-20; Ex. 13 [Bandyopadhyay
Depo.] at 118:16-119:10.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

India-based Content Editors an average salary of around $15,000—slightly less than what a full-time, U.S.-based employee earning the federal minimum wage would make in a year. There was simply no reason for Mergermarket to continue paying U.S.-based Content Editors higher salaries to perform work that could be done by Content Editors in India, particularly once the company had invested time and resources in building out the India-based Content Editing team.

Appin has not presented, and cannot present, evidence establishing that Mergermarket's decision to eliminate all ten U.S.-based Content Editor roles over the course of three years (interrupted by the COVID-19 pandemic) was motivated by discriminatory animus towards Appin. Indeed, at deposition, Appin confirmed that Project Zara (and its impact on the U.S.-based Content Editors) was gender, age, and disability neutral:

> Q:    And you're aware that the equities team, the U.S.-based equities team content editors who lost their job on -- or in April 2019 were all cisgender, right?
>
> A:    Yes.
>
> Q:    And it's also true that as part of this restructuring, both men and women lost their jobs, correct?
>
> A:    I would say that's fair to say.
>
> Q:    It's also true that individuals who lost their jobs were all younger than you. Is that also true?
>
> A:    Yes.
>
> Q:    And none of the individuals who lost their jobs were, to your knowledge, disabled, correct?
>
> A:    Correct.[100]

Appin's transgender status, putative disability, and age were not part of the discussion to eliminate her position. *First*, Appin cannot identify a single derogatory comment about her transgender status made by anyone at Mergermarket during her employment. Although it is true that Morris misgendered Appin in a few emails and at deposition, as Morris explained:

> He -- he -- she -- I keep doing this. This is so bad. I'm so sorry. I -- I need to correct myself, because I feel absolutely terrible. I've known Ricky as a male -- as a gay man for about 12 years, and then she transitioned, I think, in 20 - -- what?  2022, I think. 2022. And I've known her as a female for such a short period of time, and I keep subconsciously -- and I feel absolutely awful about it. I keep referring to her as "him," but I still call her Ricky. And so I just did it again. And I -- I caught myself. So I do apologize. I just don't mean any disrespect whatsoever. It just lives

---

[100] Ex. 2 [Appin Depo.] at 213:19-214:7; *see also* Morris Decl. at ¶ 4 (describing ages and genders of U.S.-based Content Editors impacted by Project Zara).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    in my subconscious. And please correct me if I do it again, because I do feel awful
     about it.[101]

2        The lack of coverage for transgender services under the ION Group's health insurance plan

3    is similarly insufficient to show animus or pretext because, (1) as Appin acknowledged,

4    Mergermarket had no legal obligation to provide such coverage, and (2) Mergermarket

5    immediately took steps to add coverage once Appin raised the issue.[102]

6        Critically, as Appin testified, to her knowledge, *every other Content Editor impacted by*

7    *Project Zara is cisgender*. Stucker, who was let go on the same day as Appin, identifies as a

8    cisgender male.[103] The undisputed facts demonstrate that Appin's gender, including her

9    transgender status, did not play a role in the decision to terminate her employment. *Gaines v. SBC*

10   *Commn's, Inc.*, 313 Fed. Appx. 4, 6 (9th Cir. 2008) (affirming summary judgment where plaintiff

11   was only member of protected class in group of employees subject to reduction in force).

12       *Second*, although Appin claims that certain colleagues joked about her age, she admitted—

13   as she must—that she, too, made jokes about her age.[104] These comments by colleagues are

14   insufficient to create a triable issue. *Serri v. Santa Clara University*, 226 Cal. App. 4th 830 (2014),

15   is illustrative. There, the trial court granted the defendant-employer's motion for summary

16   judgment on the plaintiff's race and national origin discrimination claim. *See id.* at 862. On appeal,

17   the plaintiff relied on numerous remarks directed to her by her supervisor and others in the

18   workplace in an attempt to establish discriminatory animus. *See id.* at 866-68. The *Serri* Court

19   rejected the plaintiff's arguments, ruling that the record did not establish that the supervisor's

20   comments were intended as derogatory remarks against the plaintiff's ethnicity or national origin.

21   The *Serri* Court held, "[a]t best, even when examined in the aggregate, this evidence raised only a

22   weak suspicion that discrimination was a basis for [the plaintiff's] termination" and does "not

23   amount to substantial evidence of discrimination necessary to defeat summary judgment." *Id.* at

24   868.

25

26   _____

27   [101] Ex. 5 [Morris Depo.] at 106:18-107:7.
     [102] *See* Ex. 2 [Appin Depo.] at 119:13-20, 204:25-205:4; 29 U.S.C. § 1144(a).

28   [103] Morris Decl. at ¶ 8.
     [104] *See* Ex. 2 [Appin Depo.] at 231:22-233:25

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Finally*, the only comment Appin has identified related to her alleged disability was made by Seber, who was not involved in making the decision to terminate Appin's employment.[105] In any event, his "you have a health issue every year like clockwork" comment—one that clearly was intended as a joke between friends—is insufficient to create a triable issue. *See, e.g.*, *Reyes v. San Francisco Unified School Dist.*, No. 11-4628 YGR, 2012 WL 4343784, at *8 (N.D. Cal. Sept. 20, 2012) (granting summary judgment in favor of defendants where plaintiff's only evidence of discrimination was a stray comment). Appin's discrimination claims fail for lack of evidence.

**B.    Appin's Retaliation Claims Fail Because She Was Terminated for a Legitimate Business Reason, and There Is No Evidence of Retaliatory Intent (Claims Nos. 4 and 6)**

Appin contends that Mergermarket terminated her employment in retaliation for requesting medical leave following her January 2022 leg injury and for complaining that "she had not been treated fairly after the ION Group acquisition, specifically, with respect to her pay and bonuses."[106] Neither of these allegations is supported by the evidence in this case.

*First*, Appin's retaliation claims fail for the same reasons her discrimination claims fail—primarily, the existence of legitimate reason for the termination decision.

*Second*, Appin's CFRA retaliation claim fails at the outset because she never requested medical leave in connection with her leg injury: Q: "In connection with this January 20, 2022, leg injury, you didn't request any type of formal leave, such as medical leave; is that right?" A: "That's correct."[107] It is axiomatic that Mergermarket could not have retaliated against Appin for a request she never made. *See Zarco*, 2021 WL 1927528, at *9 (explaining that to a make a prima facie showing of retaliation under the CFRA, a plaintiff must establish that "the plaintiff exercised his or her right to take a qualifying leave"). Morris was not even aware that Appin would be undergoing surgery on her leg in September 2022, much less that Appin apparently intended to take leave in connection with the surgery despite not having provided the 30-days' notice required under Mergermarket's medical leave policy. Moreover, the CFRA does not require an employer to reverse an employee's termination of a legitimate, nondiscriminatory reason because an employee

---

[105] Ex. 8 [Seber Depo.] at 66:21-67:3.

[106] Dkt. 51 [FAC] at ¶¶ 58-60, 78.

[107] Ex. 2 [Appin Depo.] at 224:13-16.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   subsequently requests or requires a medical leave of absence. *See Charles v. Nike, Inc.*, 255 Fed.

2   Appx. 127, 129 (9th Cir. 2007) (CFRA did not prohibit Nike from terminating the plaintiff "for a

3   legitimate nondiscriminatory reason that had nothing to do with CFRA leave or require that Nike

4   reverse its decision to terminate [the plaintiff] because [she] requested unpaid leave after Nike had

5   decided to terminate her.").

6       *Third*, Appin's apparent belief that Mergermarket retaliated against her for sending an

7   email to Morris in March 2020 asking about her second discretionary "operations and logistics"

8   bonus is implausible and unsupported by evidence. Following the ION Group's 2019 acquisition,

9   the operations functions Appin had previously performed were transferred to a dedicated facilities

10   management team, but Morris advocated for Appin to receive a second discretionary bonus for the

11   minor operations duties she performed over the following year. There is no evidence that Morris

12   considered (or even remembered) Appin's questions about her second bonus when she made the

13   decision to move forward with the second phase of Project Zara.

14       Nor can Appin manufacture a retaliation claim based on raising a discretionary "operations

15   bonus" again in 2021. She complained she received no discretionary bonus for her operations

16   work to the executive level, which caused it to be discussed at the executive level, where facts and

17   figures were sought to determine if Appin provided operations value for the preceding year.[108] The

18   inability to quantify Appin's operations value only meant that she received no operations bonus.[109]

19   Again, there is no evidence that this discussion impacted any decision (or was recalled) with

20   regard to implementing phase two of Project Zara. Critically, there is no evidence that

21   Mergermarket ever paid any other Content Editors a second discretionary bonus for "operations"

22   work, much less that it continued to do so following the ION Group acquisition.  Accordingly,

23   Appin is unable to identify any comparator who was treated more favorably than she was.

24

25   [108] *See* Ex. 19 [Drulard Depo.] at 61:24-62:5 (explaining that the business operates "in a very
26   quantitative data-driven environment. And so we just need the data and the facts to be able to flow
   through this properly."); *see also* Ex 20 [Gullapalli Depo.] at 54:15-55:1 (explaining "[t]here's
27   really no position taken. I don't have a position. I'm trying to get information, from what it looks
   like, and then presumably we had a call and she gave me some of that information.").
28   [109] *See* Ex. 5 [Morris Depo.] at 217:15-221:6 (describing her due diligence to try to quantify
   Appin's work, and finding that there were no projects she was working on).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

**C.**     **Appin's CFRA Interference Claim Fails Because Appin Never Requested a Medical Leave of Absence (Claim No. 3)**

Appin alleges that Mergermarket interfered with her ability to take CFRA leave by terminating her employment twelve days before she underwent surgery related to her January 20, 2022, leg injury.[110] To raise a triable issue of fact as to her CFRA interference claim, Appin must establish that she "asked for and was denied leave." *Choochagi v. Barracuda Networks, Inc.*, 60 Cal. App. 5th 444, 455 (2020). She is unable to meet this burden. To request CFRA leave, an employee must "provide at least verbal notice sufficient to make the employer aware that the employee needs CFRA leave, ***and the anticipated timing and duration of the leave*** . . . mere notice that an employee seeks to use sick time is insufficient." *Id*. at 454 (emphasis added); 2 CCR § 11091(a)(1).

It is undisputed that Appin never requested any form of medical leave in connection with her January 20, 2022, leg injury, much less informed Mergermarket of the timing or duration of the leave.[111] On the contrary, during her deposition Appin testified that she did not believe she would need to take a medical leave following the September 2022 surgery, explaining that she intended to "go right back to work, the same as after my gender revision surgery. I have my laptop on me and work."[112] In any case, when Appin did need time away from work related to her leg injury, she did not seek prior approval from any manager or supervisor. Instead, she would simply let her direct reports know she would be away from her desk.[113]

**D.**     **Appin's Wrongful Termination Claim Fails Because It Is Premised on Her Deficient Discrimination and Retaliation Claims (Claim No. 7)**

Appin's cause of action for wrongful termination in violation of public policy is based on the same facts as her discrimination and retaliation claims.[114] The facts do not support Appin's

---

[110] Dkt. 51 [FAC] at ¶ 49.

[111] *See* Ex. 2 [Appin Depo.] at 224:13-16 (Q: "In connection with the January 20, 2022, leg injury, you didn't request any type of formal leave, such as medical leave; is that right?" A: "That's correct.").

[112] *Id.* at 224:20-225:1.

[113] *See id.* at 230:9-24.

[114] *See* Dkt. 51 [FAC] at ¶ 85.

22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   claims for discrimination or retaliation and are therefore insufficient to support her claim for

2   wrongful termination in violation of public policy. *See Estes v. Monroe*, 120 Cal. App. 4th 1347,

3   1355 (2004) (viability of wrongful discharge in violation of public policy claim is "tethered" to

4   discrimination claim); *see also Sneddon v. ABF Freight Sys.*, 489 F. Supp. 2d 1124, 1131 (S.D.

5   Cal. 2007) ("[I]f the claim for age discrimination fails, plaintiff's cause of action for wrongful

6   termination in violation of public policy fails because it is derivative of plaintiff's statutory claim

7   under Government Code § 12940.").

8   **E.      Appin's Breach of Contract Claim is Legally and Factually Baseless (Claim No. 8)**

9           Matthews's alleged statement that Mergermarket would "take care of" Appin when she

10  retired is a textbook example of an unenforceable promise. *See, e.g.*, *Barton v. Elexsys Int'l., Inc.*,

11  62 Cal. App. 4th 1182, 1190 (1998) (holding that CEO's promise to "take care of" key executives

12  was "too vague and uncertain" to be enforceable). Even if Matthews's statement did constitute an

13  enforceable contract, which it does not, his vague promise to "take care of" Appin ***when she***

14  ***retired*** was not a promise that Mergermarket would never fire Appin.[115]  Even if Matthews had

15  meant to change the at-will nature of Appin's employment, his statement that Mergermarket

16  would "take care of her" was insufficient to do so. *See id*. ("The true, subjective, but unexpressed

17  intent of a party is immaterial and irrelevant."). Appin herself is unable to identify what

18  specifically she believes Matthews promised her beyond "a goodly sum." This is insufficient.

19  Moreover, it is undisputed that she never retired.

20  **F.      Appin's Prayer for Punitive Damages Also Fails**

21          To sustain a claim for punitive damages, Appin must establish by clear and convincing

22  evidence that Mergermarket is guilty of "oppression, fraud, or malice." Cal. Civ. Code § 3294.

23  "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in

24  conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2). "'Fraud' means an

25  intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with

26  the intention on the part of the defendant of thereby depriving a person of property or legal rights

27

28  ---
    [115] In any case, Appin received $100,000 to $125,000 in the form of an equity buyout when the
    ION Group acquired Mergermarket in 2019. *See* Ex. 2 [Appin Depo.] at 143:20-144:9.

23

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

**Davis Wright Tremaine** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    or otherwise causing injury." *Id.* at § 3294(c)(2). And "'[m]alice' means conduct which is intended

2    by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the

3    defendant with a willful and conscious disregard of the rights or safety of others." *Id.* at

4    § 3294(c)(1).

5         Appin can offer no evidence that Mergermarket ever engaged in any sort of fraudulent

6    conduct. Nor can she introduce evidence of "oppression" or "malice" given her deposition

7    testimony as to what she found offensive—innocuous jokes about her age and her need for time

8    off. Tellingly, Appin testified that she did not form the opinion that she had been discriminated

9    against until she received the termination notice.[116] Thus, even if any of Appin's claims were to

10   survive summary judgment, she could not recover punitive damages. *See College Hosp. Inc. v.*

11   *Super. Ct.*, 8 Cal. 4th 704 (1994); *Mock v. Mich. Millers Mut. Ins. Co.*, 4 Cal. App. 4th 306, 331

12   (1992) (evidence must be "so clear as to leave no substantial doubt" and "sufficiently strong to

13   command the unhesitating assent of every reasonable mind") (citation omitted).

14        It is settled law that a finding of discrimination does not automatically equate to

15   "oppression, fraud, or malice" sufficient to support punitive damages. *See Ackerman v. W. Elec.*

16   *Co., Inc.*, 860 F.2d 1514, 1520-21 (9th Cir. 1988) (finding that the district court correctly

17   dismissed punitive damages claim even though it granted summary judgment for the plaintiff on

18   the FEHA disability discrimination claim). Additionally, an employment "termination for an

19   improper reason" is not sufficient to support an award for punitive damages. *See Scott v. Phoenix*

20   *Sch.*, 175 Cal. App. 4th 702, 716 (2009).

21   **G.     The Court Should Also Grant Summary Judgment In Favor of Dealogic,**

22          **Mergermarket Ltd., and ION Trading, Inc.**

23        Appin's claims pursuant to the FEHA and CFRA require the essential element of an

24   employer/employee relationship. *See* Cal. Gov't Code §§ 12940 *et seq.*; *Kelly v. Methodist Hosp.*

25   *of S. Cal.*, 22 Cal. 4th 1108, 1116 (2000) ("[T]he structure of the statute itself . . . predicates

26   potential FEHA liability on the status of the defendant as an 'employer.'"). Similarly, Appin's

27   seventh claim for wrongful termination in violation of public policy requires the existence of an

28   _____
[116] *See* Ex. 2 [Appin Depo.] at 238:7-239:18.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

employer/employee relationship. *See Miklosky v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 901 (2008). And, Appin's breach of contract claim assumes, on its face, the existence of an employment relationship.[117]

Mergermarket (and only Mergermarket) employed Appin. Even assuming, for purposes of summary judgment only, that Dealogic, Mergermarket Ltd., and/or ION Trading, Inc. employed Appin as agents, single employers, or joint employers with Mergermarket,[118] to the extent this Court concludes summary judgment in favor of Mergermarket is warranted, it also should conclude that summary judgment in favor of Dealogic, Mergermarket Ltd., and ION Trading, Inc. is warranted.

## IV.    CONCLUSION

For all of the foregoing reasons, Mergermarket, Dealogic, and Mergermarket Ltd. respectfully request that judgment be entered in their favor and against Appin on all of Appin's claims, and if the Court determines it should exercise jurisdiction over ION Trading, Inc., judgment should also be entered in its favor. Because Acuris Inc. no longer exists as a separate, distinct entity, Mergermarket further requests that Acuris Inc. be dismissed from the action.

DATED: November 7, 2024

DAVIS WRIGHT TREMAINE LLP
ANNA R. BUONO
GIANCARLO UREY
NICHOLAS K. DOHERTY


By:  /s/ *Giancarlo Urey*
                              Giancarlo Urey

Attorneys for Defendants
MERGERMARKET (U.S.) LTD., ION TRADING, INC., DEALOGIC, L.L.C., and MERGERMARKET LTD.

---

[117] *See* Dkt. 51 [FAC] at ¶¶ 89, 90.

[118] *See id.* at ¶¶ 21, 22 (alleging the existence of agency, single employer, and joint employer).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4860-9054-8719v.6 0122151-000001

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899