1   Sarah R. Nichols (SBN 233099)
    **NICHOLS LAW, P.C.**
2   9 Pier, Suite 100
3   San Francisco California 94111
    Telephone: (415) 710-9116
4   Email: Sarah@nicholslawyer.com

5   Maria Bourn (SBN 269322)
    Anthony Tartaglio (SBN 280286)
6   **GOMERMAN | BOURN & ASSOCIATES**
7   825 Van Ness Avenue, Suite 502
    San Francisco, CA 94109
8   Telephone: 415-545-8608
    Email: Maria@gobolaw.com
9          Tony@gobolaw.com
           Jen@gobolaw.com
10         Kimberly@gobolaw.com
11         Salma@gobolaw.com

12  *Attorneys for Plaintiff*
    RICKY L. APPIN
13

14              IN THE UNITED STATES DISTRICT COURT
                THE NORTHERN DISTRICT OF CALIFORNIA
15                       OAKLAND DIVISION

16  RICKY L. APPIN,                          Case No. 4:23-cv-03372-HSG

17      Plaintiff,                           **PLAINTIFF'S OPPOSITION TO**
                                             **DEFENDANTS' MOTION FOR**
18      vs.                                  **SUMMARY JUDGMENT OR, IN THE**
                                             **ALTERNATIVE, SUMMARY**
19                                           **ADJUDICATION**
    MERGERMARKET (U.S.) LTD., a New York
20  Corporation, MERGERMARKET LIMITED,       Date:      December 12, 2024
    ION TRADING, INC., a New York            Time:      2:00 p.m.
21  Corporation, ION INVESTMENT GROUP        Courtroom: 2 (4th Floor)
    LIMITED, a foreign corporation; ACURIS
22  INC., a Delaware Corporation, DEALOGIC,
    L.L.C., a foreign LLC; and DOES 1-10,    Assigned to Hon. Haywood S. Gilliam, Jr.
23
                                             State Court Action Filed:    April 7, 2023
24      Defendants.                          Removed to Federal Court: July 6, 2023
                                             Amended Complaint Filed: March 14, 2024
25                                           Trial Date:              March 10, 2025
26

27

28

(Left margin vertical text: NICHOLS LAW, P.C. 9 PIER, SUITE 100 SAN FRANCISCO, CA 94111)

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ……………………………………………………………1

II.  RELEVANT FACTS …………………………………………………………2

    A.  Plaintiff Worked Tirelessly for Defendants for Almost 20 Years…………....…2

    B.  Defendants are Hostile to Plaintiff After Her Transition, and Plaintiff
        Complains of Discrimination ……………………………………………....……2

        1.  Denial of Gender-Affirming Care Coverage………..…………………………2

        2.  Misgendering by Decision-Makers Repeatedly…………………..…………...4

        3.  Lack of HR Support…..……………………………………………………...5

        4.  Lack of Required Training………………………………………………………6

    C.  Plaintiff is Harassed Because of Medical Issues & Notifies Them of Her
        Need for More Surgery…………………………………………………………....6

    D.  Plaintiff is Marginalized In Response to Protected Complaints & Then
        Terminated in Retaliation …………………………………………….…………7

    E.  Defendants' Witnesses Dispute Who Terminated Plaintiff……………………...9

III.  LEGAL STANDARD …………………………………………………….……... 10

IV.  LEGAL ARGUMENT……………………………………………………………10

    A.  Plaintiff's FEHA Discrimination Claims Must Withstand Summary Judgment
        Because Plaintiff Has Produced Sufficient Evidence & Defendants' Reason
        for Terminating Plaintiff is Not Credible……………………………...…………10

        1.  Plaintiff has Produced Compelling Direct Evidence of
            Discrimination………………………………………………………………11

            a)  Gender/Gender Identity……………………………………………………11

            b)  Age…………………………..…………………….…..……………………12

            c)  Disability…………………………..…………………...………………13

        2.  Plaintiff's Direct Evidence Are Not "Stray Remarks" ..…………………14

        3.  Although Unnecessary Because of the Direct Evidence of
            Discrimination, Plaintiff Can Also Establish Prima Facie Cases of
            FEHA Discrimination and Retaliation…………………………….…………15

        4.  Defendants' Own Statements Demonstrate Their Discriminatory
            Animus………………………………………………………………………17

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

5.  A Reasonable Jury Could Conclude that Plaintiff Engaged in Protected Activity, which Caused her Termination...........................18

a)  Plaintiff Opposed Discrimination Multiple Times.....................18

b)  Plaintiff had a Reasonable, Good Faith Belief that she was Opposing Discrimination ...........................................................19

c)  There is a Fact Question as to Causation.................................19

6.  Plaintiff's Evidence of Pretext Raises Questions of Fact Regarding Defendants' Stated Reason for her Termination...............................20

a)  Defendants' Use of Plaintiff's Salary is a Proxy for Age Discrimination..........................................................................20

b)  Plaintiff's Prior Performance History Establishes Pretext.................20

c)  Timing Demonstrates Pretext...............................................21

B.  Fact Issues Preclude Summary Judgment on Plaintiff's Remaining Claims.......22

1.  CFRA Interference Claim Survives Summary Judgment......................22

2.  Plaintiff's Wrongful Termination Claim Survives Summary Judgment .......................................................................22

3.  Plaintiff's Breach of Contract Claim Survives Summary Judgment.............23

4.  Punitive Damages Survive Summary Judgment................................23

C.  Joint Employment and Integrated Enterprise Relationships Emerge After the Acquisition......................................................................24

D.  In the Alternative, the Court Should Grant Plaintiff Additional Time to Perform Discovery Essential to its Case.........................................25

V.  CONCLUSION.............................................................................25

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,

      477 U.S. 242 (1986) …………………………………………………….... 10

*Bachelder v. American West Airlines, Inc.*,

      259 F.3d 1112 (9th Cir. 2001) …………………………………………… 22

*Badih v. Myers*,

      36 Cal. App. 4th 1289 (1995) …………………………………………… 22

*Billal v. Alere Health, LLC*,

      No. SA CV 14-0390-DOC, 2015 WL 1600753 (C.D. Cal. Apr. 9, 2015) …………… 17

*Bustamante v. Intuit, Inc.*,

      141 Cal. App. 4th 199 (2006) ………………………………………..……………… 23

*Celotex Corp. v. Catrett*,

      477 U.S. 317 (1986) …………………………………………………….... 10

*Clutterham v. Coachmen Industries, Inc.*,

      169 Cal. App. 3d 1223 (1985) …………………………………………… 17

*Coats v. Construction & Gen. Laborers Local No. 185*,

      15 Cal. App. 3d 908 (1971) …………………………………………… 24

*Colarossi v. Coty US Inc.*,

      97 Cal. App. 4th 1142 (2002) …………………………………………… 21

*Coleman v. Quaker Oats Co.*,

      232 F.3d 1271 (9th Cir. 2000) …………………………………………… 13

*Coszalter v. City of Salem*,

      320 F.3d 968 (9th Cir. 2002) …………………………………………… 19

*Crawford v. Metropolitan Government of Nashville and Davidson County*,

      555 U.S. 271 (2009) ........................................................................................ 18

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

*DeJung v. Sup. Ct.*,

    169 Cal. App. 4th 533 (2008) ................................................................. 11, 14

*Dawson v. Entek Int'l*,

    630 F.3d 928 (9th Cir. 2011) ........................................................................ 19

*Doe v. Progressive Casualty Insurance Co.*,

    No. 21-CV-02602-BLF, 2023 WL 6120670 (N.D. Cal. Sept. 18, 2023) …….. 12, 15, 16

*EEOC v GoDaddy Software, Inc.*,

    581 F.3d 951 (9th Cir. 2009) ……………………………………………….. 19

*EEOC v. Lennar Homes of Ariz., Inc.*,

    2005 U.S. Dist. LEXIS 22305 (D. Ariz. 2005) ………………………………….. 12

*EEOC v. Zellerbach Corp.*,

    720 F.2d 1008 (9th Cir. 1983) ……………………………………………….. 18

*Estes v. Monroe*,

    120 Cal. App. 4th 1347 (2004) ………………………………………………... 23

*Flait v. North American Watch Corp.*,

    3 Cal. App. 4th 467 (1992) ……………………………………………………. 21

*France v. Johnson*,

    795 F.3d 1170 (9th Cir. 2015) ……………………………………………….. 13

*Glenn v. Brumby*,

    663 F.3d 1312 (11th Cir. 2011) ……………………………………………….. 11

*Guz v. Bechtel Nat'l Inc.*,

    24 Cal. 4th 317 (2000) …………………………………………………………. 15

*Hawn v. Executive Jet Management, Inc.*,

    615 F.3d 1151 (9th Cir. 2010) ……………………………………………….. 15

*Hunter v. Ryan*,

    109 Cal. App. 736 (1930) ……………………………………………………... 23

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

*Iljas v. Ripley Entertainment Inc.*,

    403 F. Supp. 3d 793 (2019) ...................................................................... 12

*Lin v. Kaiser Foundation Hospitals*,

    88 Cal. App. 5th 712 (2023) ..................................................................... 21

*Mackey v. Board of Trustees of California State University*,

    31 Cal. App. 5th 640 (2019) ..................................................................... 15

*Malmstrom v. Kaiser Aluminum & Chemical Corp.*,

    187 Cal. App. 3d 299 (1986) ................................................................... 17

*McDonnell Douglas Corp. v. Green*,

    411 U.S. 792 (1973) ......................................................................... 10, 15

*McGinest v. GTE Service Corp.*,

    360 F.3d 1103 (9th Cir. 2004) .................................................................. 10

*McCoy v. Pacific Maritime Assn.*,

    216 Cal. App. 4th 283 (2013) .................................................................. 16

*Moore v. Regents of University of California*,

    248 Cal. App. 4th 216 (2016) ............................................................. 21, 22

*Moncada v. West Coast Quartz Corp.*,

    221 Cal. App. 4th 768 (2013) .................................................................. 23

*Morgan v. Regents of University of California*,

    88 Cal. App. 4th 52 (2000) ..................................................................... 14

*Moyo v. Gomez*,

    40 F.3d 982 (9th Cir. 1994) ..................................................................... 19

*Norris v. City and County of San Francisco*,

    900 F.2d 1326 (9th Cir. 1990) .................................................................. 20

*O'Mary v. Mitsubishi Elecs. Am., Inc.*,

    59 Cal. App. 4th 563 (1997) .................................................................... 11

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

*Poland v. Chertoff,*
  494 F.3d 1174 (9th Cir. 2007) ……………………………………………… 10

*Reeves v. Sanderson Plumbing Products, Inc.,*
  530 U.S. 133 (2000) …………………………………………………….... 10

*Reid v. Google,*
  50 Cal. 4th 512 (2010) …………………………………………………… 14

*Roberts v. Ford Aerospace & Comm. Corp.,*
  224 Cal. App. 3d 793 (1990) ……………………………………………… 24

*Rojo v. Kliger,*
  52 Cal. 3d 65 (1990) …………………………………………………….... 22

*Sabatini v. Hensley,*
  161 Cal. App. 2d 172 (1959) ……………………………………………… 23

*Schnidrig v. Columbia Machine, Inc.,*
  80 F.3d 1406 (9th Cir. 1996) ……………………………………………… 10

*Scotch v. Art Institute of California,*
  173 Cal. App. 4th 986 (2009) …………………………………………... 10, 13

*Scott v. Phoenix Schools, Inc.,*
  175 Cal. App. 4th 702 (2009) …………………………………………… 24

*Sheridan v. Providence Health & Services-Oregon,*
  No. 10-cv-775-PK, 2011 WL 6887160 (D. Ore. 2011) ………………………… 12

*Taking Offense v. State of California,*
  66 Cal. App. 5th 696 (2021) ………………………………………….… 11, 16

*Texas Department of Community Affairs v. Burdine,*
  450 U.S. 248 (1981) ……………………………………………………... 20

*Trop v. Sony Pictures Entertainment Inc.,*
  129 Cal. App. 4th 1133 (2005) …………………………………………... 11

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

*University of Texas Southwest Medical Center v. Nassar*,

    570 U.S. 338 (2013) ………………………………………………………... 16

*Zampierollo-Rheinfeldt v. Ingersoll-Rand de Puerto Rico, Inc.*,

    999 F.3d 37 (1st Cir. 2021) ………………………………………………… 13

**Statutes**

California Government Code § 12923(b) ................................................................. 14

California Government Code § 12940 .................................................................... 11

California Government Code § 12940(a) ................................................................ 11

California Government Code § 12940(k) ................................................................ 23

California Government Code § 12941 .................................................................... 20

California Government Code § 12945.2(t) ............................................................. 22

2 Cal. Code Regs. § 11024 ..................................................................................... 6

2 Cal. Code Regs. § 11034(b) ................................................................................ 2

2 Cal. Code Regs. § 11034(h) ............................................................................... 11

**Rules**

Federal Rule of Civil Procedure 56 ................................................................. 10, 25

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

## I.    __INTRODUCTION__

Plaintiff Ricky Lee Appin is a 75-year-old transgender woman who worked for Defendant Mergermarket for nearly two decades as its Global Head Content Editor of the Fixed Income Group and Director of Operations and Logistics until her blatantly illegal termination in September 2022, just days before she underwent scheduled surgery.  Defendants used a sham RIF to terminate Ms. Appin, a "legacy asset" aka "an old employee" that was conducted three years before her sham termination date.  Throughout her employment, Defendants pretended to support Ms. Appin during her transition surgeries yet behind her back misgendered her, said they did not want to "psychoanalyze her" and colluded under the code name "Project Zara" to unlawfully terminate her.  Defendants' Motion for Summary Judgment ("MSJ") must be denied because there are critical disputes of fact that a jury must evaluate including the following:

- Direct evidence regarding discrimination based on gender, age, and disability;
- Defendants' pretextual termination of Ms. Appin based upon: (a) a RIF completed three years prior; (b) younger employees Plaintiff trained retained outside of India; (c) Defendants denial there was a RIF claiming instead it was "natural attrition;" (d) Defendants contradictory rational for Plaintiff's termination; (e) the timing of the termination; and
- Defendants' failure to provide leave after receiving sufficient notice.

Defendants' MSJ fails to address how they treated Ms. Appin dramatically differently after she informed her employer that she is transgender.  Prior to her disclosure, she received promotions and was praised for her contributions.  After, she was sidelined and ostracized because of her protected identity.  This set the tone for permitting and ultimately endorsing further egregious discrimination and retaliation that left Ms. Appin's 20-year career in shambles.

According to Defendants there were a number of entities involved in her termination; thus, Plaintiff has named those entities.  Defendants do not argue or present any evidence regarding joint employment or integrated enterprise; thus, Plaintiff only briefly addresses it.

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

## II.    RELEVANT FACTS

### A.    Plaintiff Worked Tirelessly for Defendants for Almost 20 Years.

Ms. Appin was one of the first five staff members who launched Mergermarket in New York in 2003. Declaration of Ricky L. Appin "Appin Dec." ¶2.  She was Mergermarket's first full-time Content Editor and was promoted to Global Head Content Editor, where she reported to Mergermarket's CEO, Charlie Welsh. Ms. Appin supervised as many as 35 Content Editors around the world and was also the Director of Operations & Logistics. *Id*. at 70:25-71:9, 82:10-84:1. Her work was praised and in 2018, CEO Hamilton Matthews promised Ms. Appin that Defendants would "take care of" her when she retired. *Id.* at 138:20-25. When she expressed it would be hard to start over at her age, Mr. Matthews said she had "nothing to worry about in terms of job security." *Id.* at 18:3-8, Ex. 1. In 2019, Ms. Appin received a $250,000 bonus. *Id.* ¶3, Ex. B at 207:21-25, 210:12-211:19, Ex. 16. In a March 2020 email chain, Marc Katz (Manager of Americas) praised Plaintiff's work, saying, "...to be honest, she saved us millions." *Id*. Chief Content Officer Yana Morris noted that Ms. Appin was a good educator, patient and a very good content editor. *Id*. at 107:19-24, 161:12-22. Ms. Morris testified with respect to Ms. Appin, "The understanding was that she would never leave or retire. We just always knew that she was going to be with us." *Id.* ¶3, Ex. B at 136:12-14.  As one of the people spearheading the termination, Ms. Morris clearly changed her mind.

### B.    Defendants are Hostile to Plaintiff After Her Transition, and Plaintiff Complains of Discrimination.

#### 1.    *Denial of Gender-Affirming Care Coverage*

Defendants claim they were supportive of Ms. Appin but their support was superficial at best.  Defendants repeatedly discriminated against Ms. Appin on the basis of her gender identity through its provisions within its medical insurance plan. 2 CCR 11034(b). Insurance coverage plays a vital role in addressing gender dysphoria by ensuring access to necessary gender-affirming care, which alleviates the distress cause by incongruence between an individual's gender identity and assigned sex. Without coverage, individuals face barriers like insurers deeming procedures

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

"cosmetic" or "unnecessary," reinforcing stigma and exacerbating distress and anxiety.[1] Ms. Appin's experience highlights these challenges as she faced significant resistance obtaining coverage for essential corrective surgery. Due to these challenges and Defendants' resistance to helping her, she was forced to email Defendants at least <u>fourteen</u> times before the insurance issue was resolved. Appin Dec. ¶4, Ex. A; Nichols Dec. ¶2, Ex. A at 203:25–204:8, Ex. 15; 206:8-18, Ex.16; ¶3, Ex. B at 171:7-172:9, Ex. 10; ¶4, Ex. C at 132:11-15, Ex.17. Ms. Appin may have praised her colleagues, but this was in an effort to find support, and she was not aware of their conduct behind her back as evidenced in emails described below.

Defendants excluded transgender care from their health insurance. Nichols Dec. ¶4, Ex. C at 134:14-136:7, Ex. 17. Defendants' medical insurance was discriminatory on its face and put Plaintiff under emotional pressure while she suffered gender dysphoria and needed corrective surgery. *Id.* ¶2, Ex. A at 147:10-148:4, Ex. 8; Appin Dec. ¶5. She was given no notice about coverage changes and was left to fight with the insurance company for *months*. *Id.*; Appin Dec. ¶6; Nichols Dec. ¶4, Ex. C at 134:14-136:7, Ex. 17. Ms. Appin complained to HR about the lack of transgender-inclusive coverage on March 18, 2020, and was told by Lauren Greaves: "I wish we could do more." Appin Dec. ¶4, Ex. A. They could have - the plan was amended *four* times in 2020. *Id.* Ms. Appin's claim for coverage was denied and she appealed. *Id.* On March 23, 2020, Defendants' insurance denied her appeal. Appin Dec. ¶6. Defendants dismissed Plaintiff for months. She was forced repeatedly to discuss why she needed surgery and begged for Mr. Seber and Ms. Morris' assistance in April 2021 explaining why she needed a doctor with experience, writing: "I am so exasperated trying to battle this situation as it took me a very long time, a great deal of stress, as well as a great deal of mental suffering trying to get you to agree to cover transgender healthcare period…this is my genitalia and my sense of well-being and my health being put on the line here." *Id.* ¶3, Ex. B at 210:12-211:19, Ex. 16. This directly disputes Defendants' claim the issue was fixed in "weeks". Def. MSJ at 8.

---

[1] White Hughto, J. M. et. al., "Transgender Stigma and Health: A Critical Review of Stigma, Determinants, Mechanisms, and Intervention." *Social Science and Medicine*, Nov. 11, 2015 at https://pmc.ncbi.nlm.nih.gov/articles/PMC4689648/.

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

1    *Fourteen* months later in May 2021, Amber Bradbury, HR, informed Ms. Appin that her

2    revision surgery would not be covered as her doctor was "out of network." Nichols Dec. ¶4, Ex.

3    C at 127: 20-128:23, Ex. 16.  Mr. Seber, HR, said, "good luck with this!" to Ms. Bradbury.  When

4    asked why, he testified, "…just Ricky was tough to deal with…You know, complex…I remember

5    Amber saying that she was growing frustrated with *him*." *Id*. Here a decision-maker not only

6    misgendered Ms. Appin, but he further indicated animus because she requested insurance

7    coverage for gender-affirming care.  She was requesting care from a qualified doctor to fix issues

8    caused by the first surgery that were causing her great stress.  Mr. Seber chose to sympathize with

9    Ms. Bradbury and completely dehumanized Ms. Appin as "tough to deal with."  *Id.*

10                    *2.   Misgendering by Decision-Makers Repeatedly*

11          Even though Plaintiff began using "she/her" pronouns in 2016, Defendants misgendered

12    Ms. Appin repeatedly in person and continued to misgender her in depositions more than ***eight***

13    ***years*** after Plaintiff started her transition. *Id.* ¶2, Ex. A. at 195:24-196:16; 240:2-241:19; Appin

14    Dec. at ¶9. Ms. Morris misgendered Ms. Appin in emails, in person and **<u>59 times</u>** during her

15    deposition.  In disregard for Ms. Appin's identity, Ms. Morris still had Ms. Appin's deadname

16    listed in her phone contacts in 2024.  *Id.* ¶3, Ex. B at 119:6-24, 121:2-122:11, Ex. 5; 126:24-

17    127:1; 129:15-17; 130:3-131; 210:12-211:19, Ex. 16; 214:17-216:19, Ex. 17; ¶4, Ex. C at 74:7-

18    76:14, Ex. 7. Ms. Morris misgendered Ms. Appin at least four times in one email exchange in

19    2020 and failed to correct anyone else who used the wrong pronouns. *Id.*

20          In a 2021 email chain discussing Plaintiff's request for a reevaluation of her bonus,

21    Defendants' senior executives, ***all of whom Defendants identify as decision makers in Plaintiff's***

22    ***termination***, repeatedly misgendered Plaintiff. *Id.* ¶3, Ex. B at 214:17-216:19, Ex. 17. This was

23    ***five years*** after Ms. Appin asked her colleagues to use she/her pronouns. Appin Dec. ¶3. That

24    email chain included Kunal Gullapalli CFO, stating, "In the meantime can let ***him*** know we're

25    reviewing and will get back to ***him***… Overall seems like this person and role are clearly not long-

26    term fits."  Jody Drulard, CEO chimed in, "Who gave ***him his*** bonus? Is on a fine trajectory but

27    shouldn't think ***he*** is more than a 220+/- ***guy*** in 2021 If ***he*** is going to make us have to

28

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

psychoanalyze **him**, **he** needs to pay us for that rather than us pay **him**." *Id.* ¶3, Ex. B at 214:17-216:19, Ex. 17. Within a single email chain which directly discusses Plaintiff's compensation, the decisionmakers in Plaintiff's termination not only misgendered her a staggering ***thirteen*** times, they ridiculed Ms. Appin, made quips about her mental health and Mr. Gullapalli, the CFO, scolded Ms. Morris because of Ms. Appin's request for a bonus, "Thanks but not just looking for two cents as she's on your sheet… Pls take ownership and provide a full rec with rationale…" *Id*. It is no surprise Ms. Morris later spearheaded the termination of Ms. Appin.

### 3. Lack of HR Support

Defendants claim they were supportive of Ms. Appin, but this is contradicted by their own words. Defendants claim Ms. Morris offered to visit Ms. Appin in hospital, but she did not. *Id.* ¶2, Ex. A at 150:5-21; ¶3, Ex. B at 113:20-114:10. Ms. Appin testified, "I sensed that I was not being perceived as anything beyond sort of like, you know, some silly, you know, 60-something-year-old, you know, transgender woman." *Id.* ¶2, Ex. A at 151:11-14. Ms. Appin knew there were at least three people at the company who "believed if you're born a man, you're a man" and "had no interest in doing anything with me." *Id*. at 201:13-202:23. Khrystyna Kobryn, HR in the U.K, testified that she was aware that Plaintiff was transgender and came out in 2016, but she did not believe it was necessary to do anything beyond "be aware." *Id.* ¶7, Ex. F at 79:12-80:10. When asked at deposition what he did to support Plaintiff during her transition, Defendants' HR Manager in the U.S., Mark Seber responded, "I probably changed her name in the payroll system when she updated her Social Security card. Probably about it." *Id*. ¶4, Ex. C at 69:22-70:16. Mr. Seber's deposition testimony demonstrates his animus toward Plaintiff advocating for herself, stating, "Ricky was a very difficult person…[I]t was pretty much a culture—if Ricky wanted something, Ricky got something." *Id.* 42:17-18, 45:10-11.

The perception was that she was pushy because she politely sought assistance in relation to the enforcement of her rights and the rights of others. Ms. Appin was reprimanded for reimbursing remote employees for their cell phones and internet access by an HR representative who clearly did not understand California employment law. *Id*. ¶2, Ex. A at 103:21-23, Ex. 5.

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

5

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

1    Mr. Seber was slow to respond to her requesting her vacation days be rolled over, to which she

2    was entitled under the law and which she wanted to use to recover from the surgery. *Id*. ¶4, Ex.

3    C at 100:18-101:3, Ex. 12;101:23-102, Ex. 13; 106:15-108:2, Ex. 14. Though Ms. Appin emailed

4    Mr. Seber about this request on December 12, 2019, it took at least five email reminders and six

5    months before Mr. Seber executed the rollover in June 2020. Appin Dec. ¶7, Ex. B.

6        These requests were only "tough" because Mr. Seber had another job. Mr. Seber was

7    responsible for HR in the U.S. and authorized the company's Code of Conduct but worked another

8    job unbeknownst to ION Group. *Id*. ¶4, Ex. C at 17:10–19:17.  He was terminated by Defendants

9    in May 2023 for poor performance after working two roles for more than sixteen months.  *Id*. at

10   17:10–21:10; 35:21. There was little oversight of Defendants' HR function and certainly little

11   intent to comply with California law.  Mr. Gullapalli testified that although HR reported directly

12   to him, "it's not something that has been a focus of" his time. *Id*. ¶5, Ex. D at 70:21-71:11.

13                    *4.   Lack of Required Training*

14        Defendants failed to provide basic training on transgender issues for their managers. *Id*.

15   ¶4, Ex. C at 70:17-71:11. This deficiency persisted despite California's legal requirements to

16   provide training on policies that prohibit illegal conduct based upon gender identity, gender

17   expression and sexual orientation. 2 CCR § 11024. Mr. Gullapalli, the CFO, testified that he

18   doesn't "recall" ever attending training on age, transgender, or disability discrimination. *Id*. ¶5

19   Ex. D at 71:12-2. Such training could have minimized the misgendering described above.

20   **C.    Plaintiff is Harassed Because of Medical Issues & Notifies Them of Her
                Need for More Surgery.**

21

22        In January 2022, Plaintiff suffered a painful fall that injured her substantially, limiting her

23   ability to walk. *Id.* ¶2, Ex. A at 10:20-23; 48:12-14; 223:15-20. When she told Mr. Seber (HR)

24   that she fractured her leg she was told, "It seems like you get hurt or have some health issue every

25   year." *Id.* ¶4, Ex. C at 144:10-18, Ex. 19.  Painfully, this comment clearly referenced her gender-

26   affirming surgeries in 2019 and 2021 and then her leg surgery in 2022.

27        There is a material dispute over whether Defendants knew about Ms. Appin's need for a

28

6

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

second surgery on her leg as Plaintiff told the decision-makers repeatedly. *Id*. ¶3, Ex. B at 196:11-25; 201:7-204:4, Exs. 14 &15; ¶7, Ex. F at 240:7-241:13, Ex. 10; ¶8, Ex. G at 218:24-221:3, Ex. 38. In an email from Ms. Appin dated May 7, 2022, notifying them of her need for a second surgery, she stated, "Bottom line, <u>another surgery</u> to put an even larger rod in place and to inject synthetic bone to help it along. Another four months of being on crutches." This email was forwarded to Ms. Yana Morris. The title of the email was changed to say, "<u>Ricky going into</u> <u>surgery</u>," and Ms. Bandyopadhyay stated, "Hi Yana, Just wanted you to know. We can discuss when we meet." *Id*. ¶3, Ex. B at 203:15-205:19, Ex. 15; ¶8. Ms. Appin notified Ms. Morris and others on May 18, 2022, in an email stating, "<u>a second surgery will be required</u>." *Id*. ¶3, Ex. B at 106:15-108:2, Ex. 14. She also informed Mr. Seber (HR) in writing on May 13, 2022 (*Id*. ¶4, Ex. C at 140:16-141:23, Ex. 18) and Ms. Morris, again, in writing on September 7, 2022. *Id*. ¶3, Ex. B at 264:6-18; 266:9-13, Ex. 21 at 9965. Despite this repeated notice, Defendants have provided a declaration from Ms. Morris saying Ms. Appin had <u>not</u> informed her of the need for additional surgery on her leg. Morris Dec. at ¶9.

### D. Plaintiff is Marginalized in Response to Protected Complaints & Then Terminated in Retaliation.

Defendants have tried to justify the termination of Ms. Appin due to jobs being moved to India. This is disputed for two reasons. First, the layoffs happened in 2019 – not three years later. The CFO, Mr. Gullapalli, testified layoffs resulted in hundreds of cuts and $50 million in financial savings – in 2019. *Id*. ¶5, Ex. D at 65:13-66:24. Defendants' attempt to describe a 2022 layoff of two individuals <u>three years later</u> as part of the same layoff is disingenuous at best. Mr. Gullapalli was listed in Defendants' supplemental interrogatory responses as "aware of the identification of enterprise-wide cost saving measures and knew the business case for moving forward with phase two of the offshoring of content editing operations." *Id*. ¶9, Ex. H. However, Mr. Gullapalli testified that mass layoffs occurred in 2019 and that after that, it was just "natural attrition." *Id*. ¶5, Ex. D at 66:16-24. Further, Ms. Appin requested all documents related to Project Zara and received none dated prior to May 2, 2022. *Id*. ¶7, Ex. F at 200:19-201:7, Ex.7.

1          The second reason Ms. Appin's termination cannot be justified by her job being moved to

2   India is because there were at least seven people who had worked under Ms. Appin <u>outside</u> of

3   India who retained their jobs.   The reality is that Ms. Appin was very intentionally sidelined.

4   Decision-maker Mr. Seber dehumanized her again telling Ms. Morris, "**I expect she may get**

5   **more aggressive as she is sidelined.**" *Id.* ¶4, Ex. C at 85:18-86:15, Ex. 8.  After her transition,

6   Plaintiff was passed over for promotions.  Ms. Appin was specifically told by Ms. Morris to report

7   to Pete Gannon who had worked for Ms. Appin, stop complaining and keep a low profile in order

8   to be "protected." *Id.* ¶2, Ex. A at 107:12-108, 225:8-24.  It was exactly the opposite.

9          Meanwhile, younger employees were given promotions and/or retained. (1) Yana Morris,

10  based in the U.S., was promoted to Chief Content Officer in 2019. *Id.* ¶3, Ex. B at 214:14-216:24,

11  Ex. 17.  (2) Romil Timbadia, also based in the U.S., became Head of Content Operations in 2021.

12  *Id.* at 89:20-23; 148:2-15.  (3) Neal Armstrong (UK) a younger male content editor reported to

13  Ms. Appin at the time of her termination and was not laid off. Appin Dec. ¶8. After Ms. Appin's

14  termination, he was given additional responsibilities that should have been offered to Ms. Appin.

15  *Id.*  (4) John Tsang in Hong Kong was also another younger content editor that worked for Ms.

16  Appin at the time of her termination. *Id.*   (5) Adam Routh was a younger male content editor

17  based in Hong Kong at the time of Ms. Appin's termination, and he reported to Ms. Appin for

18  many years. *Id.* (6) Jonathan DeHart was a younger male content editor based in Japan at the time

19  of Ms. Appin's termination who had performance issues but was not terminated. Nichols Dec. ¶2,

20  Ex. A at 238:7-20; ¶3, Ex. B at 159:1-7, Ex. 6; ¶5, Ex. D at 59:6-20, Ex. 11; ¶8, Ex. G at 221:10-

21  224:14; ¶9, Ex. H. Notably, two other young male content editors were discussed as a part of the

22  layoff, but they were not terminated – Johnathan DeHart and (7) Voon Kin Hoo. *Id.*, ¶8, Ex. G at

23  221:10-224:14. Knowing that all these individuals retained their jobs outside of India made Ms.

24  Appin very suspicious of Defendants' claim her job had to be outsourced to India.

25          Ms. Morris demanded Ms. Appin drive two hours to meet Ms. Morris in person for lunch

26  on September 14, 2022 and Ms. Appin was on crutches. *Id.* ¶3, Ex. B at 185:16–192:9, Ex. 12.

27  Ms. Morris knew Ms. Appin had just bought a house she has since been forced to sell.  *Id.* ¶2, Ex.

28

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

8

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

A at 47:5-6; 249:1-10.  Ms. Morris waited until the end of the lunch to tell Ms. Appin she no longer had a job. *Id.* at 248:17–249:15. Plaintiff (then age 73) and another senior employee on her team, Mr. Stucker (then age 66), were the only employees terminated in the 2022 "reorganization." *Id.* ¶4, Ex. C at 151:17-152:8, Ex. 21; 155:5-156:3, Ex. 23.  At that meeting, Ms. Appin again raised concerns about gender and age discrimination.  *See* Morris Dec. Ex. I, September 14, 2022 Email.

### E.    Defendants' Witnesses Dispute Who Terminated Plaintiff.

The decision-makers had trouble keeping their story straight about who was involved in the decision to terminate Ms. Appin.  Yana Morris verified Mergermarket's Supplemental Responses to Interrogatories that said that Yana Morris, Kunal Gullapalli, Jody Drulard, Mark Seber and Khrystyna Kobryn were involved in the decision. *Id.* ¶9, Ex. H. Mr. Seber, Mr. Drulard and Mr. Gullapalli all denied their involvement or claimed ignorance in the decision to terminate Ms. Appin even though Ms. Morris sent them an email stating their approval was needed. *Id.* ¶4, Ex. C at 162:2-4; ¶6, Ex. E at 32:25–33:8; ¶5, Ex. D at 30:22–31:4.  Mr. Drulard told Ms. Kobryn to "take a lead" on Project Zara stating, "I can explain more early next week.  It will need legal, finance, etc. involvement and have to be very tightly executed." *Id.* ¶6, Ex. E at 75:7-77:1, Ex. 16.  Mr. Drulard testified that he was not involved with the decision, (*Id.* at 32:10-33:8, Ex. 3) yet Ms. Kobryn testified that he was. *Id.* ¶7, Ex. F at 97:10-18. Mr. Gullapalli testified he was not involved but there are emails with him recommending her termination, and in his own declaration he stated, "When making financial decisions on behalf of Mergermarket, including relevantly the restructuring decision that led to Ms. Appin's eventual dismissal, I wear/wore my "Mergermarket hat". *Id.* ¶3, Ex. B at 214:14-216:24, Ex. 17; Dkt.64-4. Ms. Kobryn identified Mr. Gullapalli as the executive responsible for HR with respect to terminations. *Id.* ¶7, Ex. F at 128:14–129:11. Although Ms. Morris was listed as Ms. Appin's manager in Defendant Mergermarket's Initial Disclosures and delivered the termination in person (*Id.* ¶4, Ex. C at 152:23-153:9, Ex. 22), she attempts to disassociate herself and testified that she had never managed Ms. Appin. *Id.* ¶3, Ex. B at 85:14-87:14, Ex. 3.

9

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

## III.  LEGAL STANDARD

A party is entitled to summary judgment if it can show an absence of disputed material facts and that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, the Court must resolve all ambiguities and inferences in favor of Plaintiff, as the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In addition, the Court "may not make credibility determinations or weigh the evidence." *Reeves. v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The Ninth Circuit has emphasized the importance of "zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004); *see also Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (recognizing the Ninth Circuit's "high standard for the granting of summary judgment in employment discrimination cases.").

## IV.  LEGAL ARGUMENT

### A.  Plaintiff's FEHA Discrimination Claims Must Withstand Summary Judgment Because Plaintiff Has Produced Sufficient Evidence & Defendants' Reason for Terminating Plaintiff is Not Credible.

The degree of proof necessary to establish a prima facie case on summary judgment is "very little," even less than a preponderance of the evidence. *Poland v. Chertoff*, 494 F.3d 1174, 1181 (9th Cir. 2007) (plaintiff need only prove the protected activity and negative employment action are not completely unrelated). Although a three-step burden shifting framework typically governs discrimination claims (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), that is not the case when there is evidence of direct discrimination, as there is here. *Scotch v. Art Institute of California* 173 Cal.App.4th 986 at 1004-1005 (2009).

#### 1.  Plaintiff has Produced Compelling Direct Evidence of Discrimination.

The Fair Employment in Housing Act ("FEHA") prohibits discrimination because of an employee's age, gender or gender identity, and disability. Gov. Code § 12940(a). A plaintiff can prove discrimination with direct or circumstantial evidence. *DeJung v. Sup. Ct.*, 169 Cal.App.4th

10

533, 549 (2008). Direct evidence is evidence that proves a fact without inference or presumption. *Trop v. Sony Pictures Entertainment Inc.* (2005) 129 Cal.App.4th 1133, 1145. "Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." *DeJung, supra,* 169 Cal.App.4th at 553. Evidence of clear discriminatory intent is "overwhelmingly probative" in discrimination cases as it "shines a spotlight on the very thing which is the focus of the litigation." *O'Mary v. Mitsubishi Elecs. Am., Inc.*, 59 Cal.App.4th 563, 575 (1997). Thus, "[o]n those occasions when there is evidence of clear discriminatory intent, it is like a gold nugget which just happens to be lying on the ground. You do not throw it away as if it were so much dross." *O'Mary, supra,* 59 Cal.App.4th at 575. As set forth below, Plaintiff has direct evidence of discrimination, meaning she can prove her discrimination claims outright, without burden shifting.

a) Gender/Gender Identity

In California an employer cannot discriminate against an employee based on the employee's gender identity or gender expression. Cal. Gov't Code §12940, *et seq.* Employers are required to identify employees by their preferred gender pronoun or name. 2 Cal. Code Regs. § 11034(h). *See also Taking Offense v. State of Calif.* 66 Cal.App.5th 696, 720 (2021) ("We recognize that misgendering may be ***disrespectful, discourteous, and insulting***, and used as an inartful way to express an ideological disagreement with another person's expressed gender identity.").

When there is direct evidence of gender (or gender identity) discrimination in a FEHA case the only question for the trier of fact is whether the evidence persuasively demonstrates the existence of unlawful discrimination. *Glenn v. Brumby* 663 F.3d 1312, 1320-1321 (11th Cir. 2011). There is substantial and egregious direct evidence of Defendants' discriminatory animus toward Plaintiff based on her gender or gender identity. Most notably, Defendants continued to egregiously misgender Plaintiff during her employment and after her 2022 termination, even as recently as during depositions in this very case, by the very executives who were the decisionmakers in Plaintiff's termination. As Plaintiff began identifying as a woman in 2016,

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

11

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

Defendants' insistence on repeatedly misgendering her and "deadnaming" her by using her former name is objectively unreasonable and is evidence of discrimination. *See Doe v. Progressive Cas. Ins. Co.*, No. 21-CV-02602-BLF, 2023 WL 6120670, at *5 (N.D. Cal. Sept. 18, 2023) (summary judgment denied on the transgender plaintiff's FEHA discrimination and retaliation claims, where plaintiff produced evidence that the defendant employer misgendered him at least five times).

Plaintiff has cited above direct evidence of misgendering, in writing, ***more than 60 times by the decision-makers alone***. See pp. 4-5 above. Plaintiff has also provided extensive evidence of Defendants' failure to provide insurance in a timely manner and the lack of support and training. See pp. 2-4 and 5-6 above.

b)  Age

Plaintiff also has produced direct evidence of Defendants' age-related discriminatory comments, which are damning direct evidence of Defendants' discriminatory animus.  *Iljas v. Ripley Entm't Inc.*, 403 F. Supp. 3d 793 at 806 (2019); *EEOC v. Lennar Homes of Ariz., Inc.*, 2005 U.S. Dist. LEXIS 22305, *26 (D. Ariz. 2005) (district president's statement in meeting that "he needed to 'get rid of the staff that he had' and 'bring in younger people to fulfill his mission'" was direct evidence of discriminatory intent); *Sheridan v. Providence Health & Servs.-Oregon*, No. 10-cv-775-PK, 2011 WL 6887160, *2 (D. Ore. 2011) (manager's comments indicating that he "was engaged in a prolonged effort to replace older nurses on the unit" constituted direct evidence).

Defendants' discriminatory age-related comments and actions include:

- Yana Morris, who was a decisionmaker in Plaintiff's termination and the senior executive who signed Plaintiff's termination letter, referred to her as a "legacy asset." Nichols Dec. ¶3, Ex. B at 249:7-250:21, Ex. 19; ¶5, Ex. D at 45:5-20, Ex. 6.

- Yana Morris referred to Plaintiff's job duties performing real estate operations for Defendants as a "legacy arrangement." *Id.* ¶3, Ex. B at 249:22-251, Ex. 19.

- On multiple occasions Ms. Appin raised age discrimination complaints to Ms. Morris due to being passed over for promotion to the executive committee. She voiced that she

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

1   felt she had been overlooked due to age. *Id.* ¶2, Ex. A at 123:16 – 125:24.

2       • Ms. Appin's role was distributed to younger males outside of India. *Id.* ¶9, Ex. H

3   at 8:15-17; 9:6-8.

4       This evidence alone creates a factual dispute regarding age discrimination. *See Coleman*

5   *v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000) (an inference of age discrimination may

6   be created by evidence that the employer had a continuing need for the employee's skills and

7   services and redistributed most of his duties among younger employees); *France v. Johnson,* 795

8   F.3d 1170, 1175-1176 (9th Cir. 2015) (plaintiff defeated summary judgment by showing

9   promotions were given to younger, less experienced agents); *Zampierollo-Rheinfeldt v. Ingersoll-*

10  *Rand de Puerto Rico, Inc.* 999 F.3d 37, 52 (1st Cir. 2021) (remarks by key manager who decided

11  to fire the plaintiff, about wanting to "rejuvenate" the team and lower costs, qualified as direct

12  evidence from which a reasonable jury could conclude plaintiff was terminated after 33 years of

13  service with no performance issues, because of his age.).

14              c)   <u>Disability</u>

15      There is abundant direct evidence of Defendants' discriminatory animus toward Plaintiff's

16  disability. As an initial note, Defendants' argument that Plaintiff does not have a viable disability

17  discrimination claim because she did not use any Defendants' preferred terminology is squarely

18  against California law. California does not require any "magic words" to put an employer on notice

19  of an employee's disability. In *Scotch v. Art Institute of California* 173 Cal. App. 4th 986 (2009),

20  the appellate court held that the employer had a duty to initiate a discussion with the plaintiff when

21  it became aware of his health condition, even though the plaintiff did not disclose his illness or

22  specific physical limitations and instead informed his employer of personal health issues that

23  limited his schedule, that he needed to avoid stress, and that he had a long term illness that affected

24  his ability to pursue a master's degree. *Id.* at 1014-1015. The Court stated (which magically did

25  not make it into Defendants' brief): "[a]lthough it is the employee's burden to initiate the process,

26  ***no magic words are necessary***, and ***the obligation arises once the employer becomes aware of***

27  ***the need to consider an accommodation***." *Scotch*, 173 Cal. App. 4th at 1013 (emphasis added).

28

1    There is a material dispute over whether Defendants knew about Ms. Appin's need for

2  surgery because Ms. Morris states in a self-serving declaration that she did not know. However,

3  Ms. Appin told numerous people about her need for surgery including Ms. Morris. See above at

4  pp. 6-7.

5              2.      *Plaintiff's Direct Evidence Are Not "Stray Remarks."*

6    Defendants hope to avoid liability by characterizing Defendants' discriminatory comments

7  as "stray remarks." This argument ignores California law, which states: "A ***single incident*** of

8  harassing conduct is sufficient to create a triable issue regarding the existence of a hostile work

9  environment if the harassing conduct has unreasonably interfered with the plaintiff's work

10 performance or created an intimidating, hostile, or offensive working environment." Cal. Gov't

11 Code § 12923(b). Very little direct evidence of the employer's discriminatory intent" is required

12 to survive summary judgment. *Morgan v. Regents of Univ. of Cal.,* 88 Cal. App. 4th 52, 69 (2000).

13 Where "a significant participant in an employment decision exhibited discriminatory animus,"

14 such "***is enough to raise an inference that the employment decision itself was discriminatory***..."

15 *DeJung, supra,* 169 Cal. App. 4th at 551 (emphasis added). Plaintiff has shown that at least four

16 of the decisionmakers in her termination—Kunal Gullapalli, Yana Morris, Jody Drulard, and Mark

17 Seber—made discriminatory comments about Plaintiff before her termination. Far from meriting

18 dismissal as "stray remarks," this alone is enough to deny summary judgment.

19    Additionally, *Reid v. Google,* 50 Cal. 4th 512, 540 (2010) requires a trial court to review

20 and base its summary judgment ruling on the totality of evidence in the record, including any

21 relevant discriminatory remark. Under *Reid,* the Court concluded "even if age-related comments

22 can be considered stray remarks because they were not made in the direct context of the decisional

23 process, a court should not categorically discount the evidence if relevant; ***it should be left to the***

24 ***fact finder to assess its probative value***." *Id.* at 540. A trial court that does not consider such

25 comments fails "to draw all reasonable inferences in favor of the plaintiff." *Id.* "Determining the

26 weight of discriminatory or ambiguous remarks is a role reserved for the jury." *Id.* at 541.

27

28

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

14

3. *Although Unnecessary Because of the Direct Evidence of Discrimination, Plaintiff Can Also Establish Prima Facie Cases of FEHA Discrimination and Retaliation.*

For FEHA claims, a plaintiff who has no direct evidence of discriminatory conduct may prove discrimination using indirect or circumstantial evidence, under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Doe v. Progressive Casualty Insurance Company,* 2023 WL 6120670, *5 (*citing Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000) (holding that, because of similarity between state and federal employment discrimination laws, California has adopted the *McDonnell Douglas* approach to claims of discrimination under FEHA)). The *McDonnell Douglas* framework requires the plaintiff to establish a prima facie case of discrimination. *Id.* If the plaintiff establishes a prima facie case "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn v. Executive Jet Management, Inc.*, 615 F.3d 1151 at 1155 (9th Cir. 2010). If this burden is met, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons for [the employee's] termination[ ] are mere pretext for unlawful discrimination." *Id.*

The specific elements of a prima facie case of FEHA discrimination involve showing that "(1) plaintiff was a member of a protected class, (2) she was qualified for the position she sought or was performing competently in the position she held, (3) she suffered an adverse employment action, and (4) some other circumstance suggests discriminatory motive." *Mackey v. Board of Trustees of California State University* 31 Cal. App. 5th 640, 661-662 (2019). Each element is met here, as Plaintiff is clearly a member of several protected classes (over 40, transgender, disabled), qualified for her position in light of her 19+ years of positive performance and qualification to do her job, suffered an employment termination and was terminated by the very individuals, Defendants' senior executives, who exhibited discriminatory animus.

To demonstrate a prima facie FEHA retaliation claim, Plaintiff can show: (1) she engaged in multiple forms of protected opposition activity; (2) Defendants fired her; (3) because of her opposition to discrimination. *See University of Texas Southwest Medical Center v. Nassar*, 570

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

U.S. 338 (2013). "Actions for retaliation are inherently fact-driven; it is the jury, not the court, that is charged with determining the facts." *McCoy v. Pac. Mar. Assn,* 216 Cal. App. 4th 283, 299 (2013). Both prima facie cases are fully met here for the same reasons outlined in the paragraph above. The remaining elements are also met because (1) a reasonable jury could conclude that Plaintiff engaged in protected activity; (2) a reasonable jury could conclude that Plaintiff's protected activity was the cause of her termination; and (3) there is ample evidence of pretext.

A recent case out of this district is almost squarely on point. In *Doe v. Progressive Casualty Insurance Company*, a 2023 case out of the San Jose Division, the Court denied the defendant's motion for summary judgment on the transgender employee's FEHA harassment, discrimination, and retaliation claims rejecting the employer's argument that its repeated misgendering of the employee (five times) were isolated incidents. 2023 WL 6120670, *5, 9. The plaintiff raised other issues—scrutiny and reduction of the plaintiff's work, an unwanted transfer, scrutiny of the plaintiff's medical treatments, and improper disclosure of the employee's transgender status. *Id. The* Court found that the plaintiff's complaints, "viewed 'as a whole,'" were "more than sufficient to create a factual issue[.]" *Id.* The Court noted, "'***very little evidence*** is necessary to raise a genuine issue of fact regarding an employer's motive,' as '***any indication of discriminatory motive*** may suffice to raise a question that can only be resolved by a factfinder.'" *Id.* at *7 (emphasis added). Other courts have similarly found misgendering "may be disrespectful, discourteous, and insulting, and used as an inartful way to express an ideological disagreement with another person's expressed gender identity….At the very least, willful refusal to refer to transgender persons by their preferred pronouns conveys general disagreement with the concept that a person's gender identity may be different from the sex the person was assigned at birth. Consistent with the Legislature's findings in enacting section 1439.51, we conclude misgendering does indeed convey an ideological message." *Taking Offense,* 66 Cal. App. 5th at 712.

Finally, Defendants cite several cases involving layoffs, arguing those cases support their termination decisions. Defendants cite *Malmstrom v. Kaiser* 187 Cal. App. 3d 299, 320 (1986) and *Clutterham v. Coachmen,* 169 Cal. App. 3d 1223 (1985). Although in the context of RIFs,

16

these cases are easily distinguishable because they involved contract claims, not FEHA claims, and do not address discriminatory decisions in RIFs. *See Billal v. Alere Heath, LLC*, No. SA CV 14-0390-DOC, 2015 WL 1600753 (C.D. Cal. Apr. 9, 2015) (noting that the defendant's pre-FEHA cases were "inapposite" to the plaintiff's FEHA claims). As in *Billal*, here, Defendants hang their hat on Plaintiff's "at will" employment status. But as *Billal* demonstrates, an "at-will" employment status does not negate Plaintiff's rights under FEHA. Summary judgment should be denied.

### 4.    *Defendants' Own Statements Demonstrate Their Discriminatory Animus.*

Defendants' knowledge of Plaintiff's ongoing complaints regarding her gender-affirming surgery insurance coverage, requests for time off to handle her disability, and concerns about her compensation provides a factual basis for the jury to conclude that Defendants' motivation was discrimination or retaliation. Prior to 2019, Defendants viewed Plaintiff as a strong performer and critical contributor to the team; Ms. Morris testified that Plaintiff was a good content editor, a patient teacher, and a good educator to junior content editors. Nichols Dec. ¶3, Ex. B at 107:19-24, 161:12-22. After Plaintiff's gender affirming surgery, Defendants made it clear that they viewed Plaintiff as "challenging" and a "tough" problem to be dealt with. *Id.* ¶4, Ex. C at 42:13-15, 89:6-14, 127:25-128:1. Their animosity toward Plaintiff is clear—as recently as her own deposition this year, when executives repeatedly misgendered Plaintiff. See above at pp. 4-6.

The 2021 email chain between Defendants' senior executives, in which they discussed Plaintiff's request for bonus reconsideration, is particularly telling and clear evidence of pretext. The individuals on the chain, all identified as decisionmakers in the decision to terminate Plaintiff's employment, discussed Plaintiff's contributions in dismissive terms, making it clear that they viewed her with animus. *Id.* ¶3, Ex. B at 214:17-218:18, Ex.17. While Defendants claim they did not know Ms. Appin, Ms. Morris certainly did, and she did not correct the misgendering and instead said, "(T)here is a long history of self-promoting." *Id.*

Mr. Seber's statement to Plaintiff, "I feel you have one health issue a year...like clockwork" is further evidence of pretext with respect to Plaintiff's disability. *Id.* ¶4, Ex. C at 144:10-18, Ex. 19. This statement, made by the most senior HR employee that Plaintiff interacted with reflects

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

Defendants' awareness of Plaintiff's disability and is sufficient to withstand summary judgment.

       5.    *A Reasonable Jury Could Conclude that Plaintiff Engaged in Protected Activity, which Caused her Termination.*

A reasonable jury could (and should) find that Defendants fired Plaintiff because of her reasonable good faith belief that Defendants violated her rights under FEHA. *See EEOC v. Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983). Given the evidence that Plaintiff has produced, a jury must decide material factual disputes regarding reasonableness.

      a)   <u>Plaintiff Opposed Discrimination Multiple Times.</u>

"'When an employee communicates to her employer a belief that the employer has engaged in…a form of employment discrimination, that communication 'virtually always' constitutes the employee's *opposition* to the activity.'" *Crawford v. Metropolitan Government of Nashville and Davidson County*, 555 U.S. 271, 276 (2009) (emphasis in original). There is ample evidence that Plaintiff communicated her belief that Defendants discriminated against her based on gender identity, age, and disability discrimination when she: (1) complained about the lack of insurance coverage for transgender care; (2) complained of age discrimination to Ms. Morris; (3) notified Defendants' HR manager, Mr. Seber, of her disability; and (4) complained of Defendants' inaction regarding diversity and inclusion during the Black Lives Matter movement. Appin Dec. ¶3, Ex. A; Nichols Dec. ¶2, Ex. A at 123:16-124:6; *Id.* ¶4, Ex. C at 85:4-86:15, Ex. 8; 144:10-18, Ex. 19; ¶3, Ex. B at 164:5-165:18, Ex. 9.  Defendants, in their ill-fated attempt to argue that Plaintiff did not "oppose" discrimination, ignore the entirety of Plaintiff's complaints over time. "[C]ourts have not imposed a rigorous requirement of specificity in determining whether an act constitutes opposition." *Zellerbach*, *supra*, 720 F.2d at 1013 (citations omitted). Taken in their totality, Plaintiff complained that she was being treated unfairly based on her age, gender and/or gender identity, and these constitute protected activity.

      b)   <u>Plaintiff had a Reasonable, Good Faith Belief that she was Opposing Discrimination.</u>

Ms. Appin complained directly to the Diversity and Inclusion Committee, which included Mr. Seber and Ms. Morris: "*[i]t is offensive to pretend to be inclusive when we can't even be*

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

1    *"inclusive in our own insurance program. Clearly the ION Group US Benefits <u>blatantly</u>*

2    *<u>discriminates</u> against veterans, trans people (our insurance will not pay for any health-related*

3    *issues for these groups such as PTSD treatment or "sex transformation" needs, which is a horrible*

4    *and offensive term you use)." Id.* ¶2, Ex. A, 118:13-15 at Ex. 7. Ms. Appin also complained

5    multiple times about being excluded from the executive committee based upon her age. *Id.* at

6    123:16-125:24.

7        The Ninth Circuit has noted the "reasonableness of [Plaintiff's] belief…must be assessed

8    according to an objective standard—one that makes due allowance, moreover, for the limited

9    knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims."

10   *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). An employee's erroneous belief that an

11   employer engaged in discrimination is reasonable, if premised on a mistake made in good faith.

12   *Id.*    The appropriate inquiry is whether, given the totality of circumstances, Plaintiff had a

13   reasonable basis to oppose perceived age and gender/gender identity discrimination. *See EEOC v*

14   *GoDaddy Software, Inc.*, 581 F.3d 951, 963 (9th Cir. 2009). The answer to that question is

15   unequivocally "yes."

16        c)   <u>There is a Fact Question as to Causation.</u>

17       Plaintiff has produced sufficient evidence of causation, as it is well-settled that a jury may

18   infer causation based on timing alone. *See Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir.

19   2011) (temporal proximity alone can constitute sufficient evidence of retaliation for purposes of

20   both prima facie case and showing of pretext). "Whether an adverse employment action is intended

21   to be retaliatory is a question of fact that must be decided in the light of the timing and the

22   surrounding circumstances." *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2002). Here,

23   the circumstances reflect an escalation of discrimination complaints, culminating in Defendants

24   deciding to fire Plaintiff two weeks before her scheduled surgery, which Defendants knew about.

25   This timing with a backdrop of discrimination complaints creates a fact issue for the jury.

26

27

28

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

19

6. *Plaintiff's Evidence of Pretext Raises Questions of Fact Regarding Defendants' Stated Reason for her Termination.*

Defendants assert they fired Plaintiff because of legitimate business reasons. Viewing the record as a whole, however, there is ample evidence demonstrating Defendants' explanation is pretextual. A plaintiff may demonstrate pretext either by "directly persuading the court that a reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 at 256 (1981). When determining pretext, courts consider the information known to the employer when it took the adverse employment decision, the plausibility of the explanations offered considering the evidence and any inconsistencies within these explanations. *Norris v. City and County of San Francisco*, 900 F.2d 1326, 1331 (9th Cir. 1990).

a) Defendants' Use of Plaintiff's Salary is a Proxy for Age Discrimination.

Defendants' "legitimate, non-discriminatory reason" for terminating Plaintiff's employment—her comparatively high salary—proves liability. Under California law, "use of salary as the basis for differentiating between employees when terminating employment" can constitute age discrimination. Cal. Govt. Code § 12941. Salary discrimination can alone constitute proof of age discrimination where it can be demonstrated to have an adverse impact on older workers. *Id.* That is exactly the case here. Defendants freely admit that Plaintiff's salary is the stated reason for her and Mr. Stucker's termination. Def's Motion at 12:6. There is no question that Defendants' use of salary had an adverse impact on the only two content editors who were over age 65, while younger content editors outside of India kept their jobs.[2]  The jury could conclude that salary constituted a proxy for age and make an inference of discrimination.

b) Plaintiff's Prior Performance History Establishes Pretext.

"Pretext may also be inferred…by the terminated employee's job performance before [employment] termination." *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 479 (1992) (pretext proven by accolades from the decision-maker about his "doing a good job," the

---

[2] Furthermore, Defendants repeatedly objected to Plaintiff's questions regarding the salary information of competitors so any reliance on that argument should be denied. Nichols Dec. ¶8, Ex. G at 34:20-35.

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

company's being lucky to have him, and his potentially receiving a promotion); *Colarossi v. Coty US Inc.* 97 Cal. App. 4th 1142, 1153 (2002) (pretext proven, in part, by the plaintiff's own undisputed testimony that she had been a "top performer," received "numerous awards," and "never had a negative thing said about [her]"). Plaintiff had almost 20 years of exceptional work performance before Defendants blindsided her by firing her. This further demonstrates that Plaintiff's termination was discriminatory. Defendant's motion does not explain why other younger content editors were retained and promoted outside of India while Ms. Appin was explicitly "sidelined." Nichols Dec. ¶4, Ex. C at 85:18-86:15, Ex. 8. As a result, disputed issues of material fact remain, and the Motion should be denied. *See Doe,* 2023 WL 6120670, at *7.

### c) Timing Demonstrates Pretext.

Pretext may also be inferred from the timing of the termination decision, by the identity of the person making the decision, and by the employee's job performance before termination. *Flait v. North American Watch Corp.,* 3 Cal .App. 4th 467, 479 (1992); *Lin v. Kaiser Foundation Hospitals* 88 Cal. App. 5th 712 (2023) (finding plaintiff's termination was pretextual when a RIF started before Plaintiff informed Defendant of need for medical leave and Plaintiff was later added to the RIF); *Moore v. Regents of University of California,* 248 Cal. App. 4th 216, 250 (2016).

With respect to timing, Defendants terminated Plaintiff's employment only two weeks before a scheduled surgery that Defendants knew about. See pp. 6-7 above. Plaintiff, in fact, hobbled into the termination meeting while she was on crutches. Nichols Dec. ¶3, Ex. B at 185:16–192:9, Ex. 12. By Defendants' own admission, the RIF took place in 2019, and Plaintiff was not included in that RIF. ***Three years later***, after Plaintiff's numerous and outspoken complaints and almost immediately before a scheduled surgery, Defendants then conveniently decided that Plaintiff was excess baggage. Notably, Defendants did not lay off any content editors between the 2019 layoff and the 2022 layoff, which targeted only two senior citizens. This is exactly the situation *Lin* court considered and found pretextual. *See Lin*, 88 Cal. App. 5th 712. At a minimum, the timing itself creates a fact issue that must be resolved by a jury.

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**B.      Fact Issues Preclude Summary Judgment on Plaintiff's Remaining Claims.**

*1.  CFRA Interference Claim Survives Summary Judgment.*

Defendants' termination two weeks before Plaintiff needed medical leave interfered with Plaintiff's rights under CFRA.  It is unlawful for an employer "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" provided by CFRA. Cal. Gov. Code § 12945.2(t). An interference claim has the following elements: (1) the employee's entitlement to CFRA; and (2) the employer's interference with or denial of those rights. *Moore, supra,* 248 Cal. App. 4th at 250. This claim does not invoke the *McDonnell Douglas* burden-shifting. *Id.*; *Bachelder v. Amer. W. Airlines, Inc.*, 259 F.3d 1112, 1131 (9th Cir. 2001) ("a claim requires only that the employer deny the employee's entitlement to CFRA-qualifying leave, interfere with those rights, or fail to notify the employee of their rights under CFRA."). The CFRA does not require an employee to use any "magic words" to invoke the right to leave. *See id.*  There is no dispute Plaintiff was unable to take leave in September 2022, when she had her surgery, because Defendants terminated her. Nichols Dec. ¶2, Ex. A at 264:10-21. Ms. Morris admitted that she was aware that Plaintiff needed surgery. *Id.* ¶3, Ex. B at 196:11-25; 201:7-202:16, Ex. 14; 264:6-18; 266:9-13, Ex. 21 at 9965. Plaintiff has met the prima facie requirements for her CFRA claim: she was entitled to CFRA leave; Defendants were on notice of Plaintiff's need for leave; and, by firing her, Defendants interfered with her CFRA rights.

*2.  Plaintiff's Wrongful Termination Claim Survives Summary Judgment.*

It is well-settled that the basis for a public policy wrongful termination claim may be brought independently of any claim under the FEHA.[3] *Rojo v. Kliger,* 52 Cal.3d 65, 89-91 (1990) (sex discrimination); *Badih v. Myers,* 36 Cal. App. 4th 1289, 1293 (1995) (employer not subject to FEHA can be sued for wrongful termination in violation of public policy). Further, FEHA also

---

[3] See *Roquemore v. California Dep't of Forestry & Fire Prot.,* No. CIV-F-1944 AWIDLB, 2009 WL 1391522, at *4 (E.D. Cal. May 14, 2009) (noting that that discrimination cases involve, by their very nature, "several causes of action arising from the same set of facts. A responsible attorney handling an employment discrimination case must plead a variety of statutory, tort and contract causes of action in order to fully protect the interests of his or her client.'").

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

requires employers to take "all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "FEHA's provisions prohibiting discrimination may provide the policy basis for a claim for wrongful discharge in violation of public policy." *Estes v. Monroe*, 120 Cal. App.4th 1347, 1355 (2004). Defendants' citation to *Estes* ("...the viability of plaintiff's tort claim is tethered to the meaning of the FEHA") is simply dicta in the context of an appeal, where the trial court otherwise determined that the plaintiff National Guardsman's claims were not justiciable. That case is not analogous here, as there has been no underlying finding that Plaintiff's claims are not justiciable.

### 3.    *Plaintiff's Breach of Contract Claim Survives Summary Judgment.*

California courts enforce a contract if it is sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 209 (2006). In *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 798 (2013), the appellate court discussed *Hunter v. Ryan*, 109 Cal. App. 736, 738-39 (1930) and *Sabatini v. Hensley*, 161 Cal. App. 2d 172 (1959). In both cases, the courts found that oral promises of the employer were sufficient to form an enforceable contract.

In *Hunter*, the employer agreed to pay the plaintiff employee a "substantial" amount of money upon his retirement. *Moncada*, 221 Cal. App. at 798. Similarly, in *Sabatini*, the employer promised to pay the employee a fixed salary and unspecified bonus. *Id.* The *Sabatini* court rejected the employer's argument that the promise was not sufficiently definite. *Id.* In both of those cases, the courts applied the doctrine of quantum meruit to find that the plaintiff employees were entitled to the reasonable value of their services based upon the promises made. *Id.* Likewise, although Defendants' former CEO did not promise Plaintiff indefinite employment, his promise to Plaintiff was sufficiently specific to award her the reasonable value of her services after retirement. To what extent, in turn, is a jury question. *Bustamante*, 141 Cal. App. 4th at 209.

### 4.    *Punitive Damages Survives Summary Judgment.*

Punitive damages are appropriate where the defendant's acts are in blatant violation of law or policy. *See Scott v. Phoenix Schools, Inc.*, 175 Cal. App. 4th 702, 715-16 (2009). As explained

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

herein, Defendants repeatedly and maliciously violated Plaintiff's rights, which culminated in Defendants' malicious firing of Plaintiff. "An employer is responsible for the willful and malicious acts of an employee which he has ratified.  Failure to discharge an employee or agent guilty of oppressive acts towards [others] is in itself evidence to show ratification." *Coats v. Construction & Gen. Laborers Local No. 185,* 15 Cal. App. 3d 908, 914 (1971). Failure to take effective remedial action can establish ratification for purposes of punitive damages. *Roberts v. Ford Aerospace & Comm. Corp.,* 224 Cal. App. 3d 793, 801-802 (1990). Here, Plaintiff has made a prima facie showing that Defendants acted egregiously in violating her rights. The egregiousness was on full display as recently as during Ms. Morris's deposition, in which Ms. Morris—a key decisionmaker in Plaintiff's termination—continued to misgender her even eight years later. *Id.* ¶3, Ex. B at 119:6-24, 121:2-122:11, Ex. 5; 126:24-127:1; 129:15-17; 130:3-131; 210:12-211:19, Ex. 16; 214:17-216:19, Ex. 17; ¶4, Ex. C at 74:7-76:14, Ex. 7. Likewise, Defendants' actions in terminating Plaintiff two weeks before a scheduled surgery (of which Defendants were fully aware) are egregious and warrant an award of punitive damages.

### C.    Joint Employment and Integrated Enterprise Relationships Emerge After the Acquisition.

Although Plaintiff's paystub listed Mergermarket (U.S.) Ltd as her employer, ION Trading, Inc. provided Plaintiff's benefits, and Defendant listed additional names - ION Analytics, Dealogic L.L.C., and Mergermarket Ltd. - as the multiple entities that employed the five individuals who made the decision to terminate Plaintiff. *Id.* ¶3, Ex. B at 85:14-87:14, Ex. 3. Those individuals were Jody Drulard, CEO of ION Analytics who testified he worked for ION Analytics and Dealogic; (*Id.* ¶6, Ex. E at 21:13-22:4), Kunal Gullapalli who testified he was employed by ION Trading, Inc. but primarily worked for ION Investment Corporation S.a.r.l. (*Id.* ¶5, Ex. D at 24:11-25:3); Mark Seber, Human Resources Director for Dealogic L.L.C., who testified he worked for various ION entities (*Id.* ¶4, Ex. C at 16-17:5, 29:18-30:14); and Yana Morris listed as working for Dealogic, LLC. Co-employment is inevitable where different entities employ individuals in the same reporting structure. Obviously multiple employers controlled Ms. Appin's employment and it would be premature to dismiss any of the named entities.

24

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG

NICHOLS LAW, P.C.
9 PIER, SUITE 100
SAN FRANCISCO, CA 94111

**D.      In the Alternative, the Court Should Grant Plaintiff Additional Time to Perform Discovery Essential to its Case.**

FRCP 56(d) provides that "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may…allow time to obtain affidavits or declarations or to take discovery." Defendants have repeatedly abused the discovery process, and this is the subject of three pending joint letters. Dkts. 140, 145 & 148. For example, one of the letters concerns documents regarding Plaintiff's termination, her work duties, work duties and compensation of comparator employees, documents relating to Plaintiff's gender-affirming surgery, and more. Nichols Dec. ¶11. Additionally, it has become apparent that Defendants have actively blocked Plaintiff's ability to prosecute her case. Mr. Gullapalli, the CFO, unilaterally refused to provide more than two hours of testimony. This has frustrated Plaintiff's ability to obtain deposition testimony about the reasons for her termination. *Id*. For the reasons described in those three discovery letters and the concurrently filed Nichols Declaration, the Court must, at a minimum, provide Plaintiff with additional time to conduct discovery. Plaintiff proposes that the current case deadlines all be extended by 91 days.

## V.      CONCLUSION

Plaintiff was terminated due to the discriminatory and retaliatory motives of Defendants. Defendants' justifications for those actions and why younger, non-transgender, non-disabled content editors were treated more favorably have significant issues of credibility and believability. There are clearly issues of disputed material facts, and therefore Defendants' MSJ should be denied.

Dated: November 21, 2024            **NICHOLS LAW, P.C.**

By:_____
            Sarah R. Nichols
            *Attorney for Plaintiff*
            Ricky Lee Appin

**PLAINTIFF'S MPA ISO OPPOSITION TO DEFENDANTS' MSJ**
*Appin v. Mergermarket (U.S.) Ltd, et al.*
Case No. 4:23-cv-03372-HSG