1  ANNA R. BUONO (State Bar No. 232753)
      annabuono@dwt.com
2  GIANCARLO UREY (State Bar No. 267069)
      giancarlourey@dwt.com
3  NICHOLAS K. DOHERTY (*pro hac vice*)
      nicdoherty@dwt.com
4  DAVIS WRIGHT TREMAINE LLP
   350 South Grand Avenue, 27th Floor
5  Los Angeles, California 90071
   Telephone:    (213) 633-6800
6  Facsimile:    (213) 633-6899

7  Attorneys for Defendants
   MERGERMARKET (U.S.) LTD., ION TRADING, INC.,
8  DEALOGIC, L.L.C., and MERGERMARKET LTD.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| RICKY L. APPIN, | Case No. 4:23-cv-03372-HSG |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| vs. | |
| MERGERMARKET (U.S.) LTD., a New York Corporation, ION TRADING, INC., a New York Corporation, ACURIS INC., a Delaware Corporation, and DOES 1–10, | Assigned to Hon. Haywood S. Gilliam, Jr. |
| | Date:       December 12, 2024<br>Time:       2:00 p.m.<br>Courtroom: 2 (4th Floor) |
| Defendants. | State Court Action Filed:   April 7, 2023<br>Removed to Federal Court: July 6, 2023<br>Amended Complaint Filed: March 14, 2024<br>Trial Date:                          March 10, 2025 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. REPLY ARGUMENTS .................................................................................................. 1

    A. Appin Did Not Meet Her Burden to Show that the Termination Decision Was Unlawful ....................................................................................................... 1

        1. There Is No Direct Evidence of Discrimination............................................ 2

        2. Nor Did Plaintiff Establish a Triable Issue as to Pretext.............................. 5

    B. Appin Failed to Establish A Basic Element of Her CFRA Claims ....................... 11

    C. Appin's *Derivative* Wrongful Termination Claim Also Fails............................... 12

    D. Appin's Opposition Confirms That Her Contract Claim Is Woefully Deficient .............................................................................................................. 13

    E. Appin Is Not Entitled to Punitive Damages ........................................................ 14

    F. Summary Judgment Should Be Entered for All Defendants................................ 14

    G. The Court Should Deny Appin's Request for Additional Time............................ 14

III. CONCLUSION ............................................................................................................ 15

i
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adetuyi v. City & Cnty. of San Francisco*,
  63 F. Supp. 3d 1073 (N.D. Cal. 2014) ................................................................................... 2

*Amfosakyi v. Frito Lay, Inc.*,
  496 F. App'x 218 (3d Cir. 2012) ........................................................................................... 6

*Bachelder v. American West Airlines, Inc.*,
  259 F.3d 1112 (9th Cir. 2001) ............................................................................................ 11

*Barton v. Elexsys International, Inc.*,
  62 Cal. App. 4th 1182 (1998) ............................................................................................. 14

*Canada v. Blain's Helicopters, Inc.*,
  831 F.2d 920 (9th Cir. 1987) ................................................................................................ 1

*Carmen v. SanFrancisco Unified Sch. Dist.*,
  237 F.3d 1026 (9th Cir. 2001) .............................................................................................. 4

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................................... 14

*DeJung v. Super. Ct.*,
  169 Cal. App. 4th 533 (2008) ............................................................................................... 2

*Doe v. Progressive Casualty Insurance Co.*,
  No. 21-cv-02602-BLF, 2023 WL 6120670 (N.D. Cal. 2023) .............................................. 3

*E.E.O.C. v. Ethan Allen, Inc.*,
  44 F.3d 116 (2d Cir. 1994) ................................................................................................... 8

*Gaines v. SBC Commn's, Inc.*,
  313 Fed. App'x 4 (9th Cir. 2008) ......................................................................................... 4

*Garrett v. City of Los Angeles*,
  No. CV 12-1670 FMO (SSX), 2014 WL 11397949 (C.D. Cal. Mar. 3, 2014) ................... 11

*Guthrey v. State of Cal.*,
  63 Cal. App. 4th 1108 (1998) ............................................................................................... 4

*Hanson v. Lucky Stores, Inc.*,
  74 Cal. App. 4th 215 (1999) ............................................................................................... 12

*Hunter v. Ryan*,
  109 Cal. App. 736 (1930) ................................................................................................... 13

ii
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Hunter v. Sparling*,
  87 Cal. App. 2d 711 (1948) .................................................................................................. 13

*LeMar v. CVS Pharmacy, Inc.*,
  No. CV 14-1698 PSG, 2015 WL 12681646 (C.D. Cal. May 5, 2015) ..................................... 4

*Lin v. Kaiser Foundation Hospitals*,
  88 Cal. App. 5th 712 (2023) ..................................................................................................... 9

*Marnocha v. St. Vincent Hosp. & Health Ctr., Inc.*,
  986 F.3d 711 (7th Cir. 2021) ..................................................................................................... 7

*Matthews v. Xerox Corp.*,
  319 F. Supp. 2d 1166 (S.D. Cal. 2004) ................................................................................... 13

*McRae v. Dep't of Corr. & Rehab.*,
  142 Cal. App. 4th 377 (2006) ................................................................................................... 4

*Messer v. Ohio*,
  No. 1:11-cv-246, 2013 WL 394333 (S.D. Ohio Jan. 31, 2013) ................................................ 4

*Moran v. Selig*,
  447 F.3d 748 (9th Cir. 2006) ..................................................................................................... 6

*Morgan v. Regents of Univ. of Cal.*,
  88 Cal. App. 4th 52 (2000) ....................................................................................................... 2

*Nagler v. Garcia*,
  370 Fed. App'x 678 (6th Cir. 2010) ........................................................................................ 13

*Niemi v. NHK Spring Co.*,
  543 F.3d 294 (6th Cir. 2008) ................................................................................................... 14

*Orr v. Bank of Am., NT & SA*,
  285 F.3d 764 (9th Cir. 2002) ..................................................................................................... 1

*Payne v. Nw. Corp.*,
  113 F.3d 1079 (9th Cir. 1997) ................................................................................................... 8

*Poland v. Chertoff*,
  494 F.3d 1174 (9th Cir. 2007) ................................................................................................... 2

*Reid v. Google*,
  50 Cal.4th 512 (2010) ................................................................................................................ 5

*Sabatini v. Hensley*,
  161 Cal. App. 2d 172 (1959) ................................................................................................... 13

*Sanders v. Arneson Products, Inc.*,
  91 F.3d 1351 (9th Cir. 1996) ................................................................................................... 12

iii

DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

**D**AVIS **W**RIGHT **T**REMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Scott v. Phoenix Sch.*,
    175 Cal. App. 4th 702 (2009) ................................................................................................ 14

*Serri v. Santa Clara Univ.*,
    226 Cal. App. 4th 830 (2014) .................................................................................................. 2

*Tatum v. Schwartz*,
    No. CIV S-06-01440DFLEFB, 2007 WL 419463 (E.D. Cal. Feb. 5, 2007) ........................... 11

*Trop v. Sony Pictures Ent., Inc.*,
    129 Cal. App. 4th 1133 (2005) ................................................................................................ 2

*Vira v. Crowley Liner Servs., Inc.*,
    723 Fed. App'x 888 (11th Cir. 2018) ....................................................................................... 8

*Wills v. Super. Ct.*,
    195 Cal. App. 4th 143 (2011) ............................................................................................. 2, 8

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
    274 F.3d 1276 (9th Cir. 2001) ............................................................................................... 10

*Yeager v. Bowlin*,
    693 F.3d 1076 (9th Cir. 2012) ................................................................................................. 3

**Rules**

Federal Rule of Civil Procedure
    56(c) ...................................................................................................................................... 14
    56(d) ................................................................................................................................ 14, 15

Northern District of California Civil Local Rule 7-5 ..................................................................... 1

iv
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## I. INTRODUCTION

In her Opposition[1] to Defendants' Motion for Summary Judgment (the "Motion"), Ricky L. Appin argues Defendants intentionally targeted her because of her gender, age, disability, and protected complaints. In making these arguments, she ignores competent evidence and mischaracterizes the holdings of several cases she relies upon. Her Opposition is most notable for the seven key facts it does not dispute:

- Mergermarket's restructuring was gender, age, and disability neutral. Younger Content Editors, cisgender, male Content Editors, and able-bodied Content Editors also lost their jobs as a result of the restructuring Mergermarket began in 2019.
- At least as of 2022, Mergermarket's India-based Content Editors were performing "basically the same" work as the U.S.-based Content Editors but at a significantly lower cost.
- Following her first gender confirmation surgery in 2019, Appin sent emails in which she wrote that she felt "celebrated, loved, [and] supported" by her coworkers and was "blessed."
- Harold Stucker, who was let go the same day as Appin, identifies as a cisgender male.
- Mergermarket has not employed any U.S.-based Content Editor since September 2022.
- Since September 2022, Mergermarket has only hired Content Editors in India.
- Appin never requested medical leave in connection with or as a result of her 2022 leg injury.

Mergermarket did not discriminate or retaliate against Appin. Nor did it subject her to an unlawful termination or otherwise breach a contract it had entered with her. For the reasons described in the Motion and in the instant Reply, summary judgment in favor of Defendants and against Appin is both appropriate and warranted.

## II. REPLY ARGUMENTS

**A. Appin Did Not Meet Her Burden to Show that the Termination Decision Was Unlawful**

In the Motion, Mergermarket presented competent evidence regarding the decision to

---

[1] Appin attaches deposition testimony and exhibits shown at depositions to the declaration of Sarah Nichols. *See* Exs. A through G. She fails to cite authenticating language in support of any of the exhibits that were shown depositions. Absent such authenticating language, the Court may properly—and Defendants contend it should—disregard the exhibits shown at depositions. *See* N.D. Cal. Civ. Loc. Rule 7-5 ("evidentiary matters must be appropriately authenticated"); *see also Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (statement in counsel's affidavit that an exhibit was a true and correct copy of a deposition not sufficient to authenticate).

1
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

terminate Appin's employment, as well as the employment of *every other* U.S.-based Content Editor. In an effort to reduce costs, it eliminated all U.S.-based content editing functions and moved those functions to India, a lower-cost jurisdiction. "[I]f the defendant presents evidence showing a legitimate, nondiscriminatory reason, the burden again shifts to the plaintiff to establish the defendant intentionally discriminated against him or her." *Wills v. Super. Ct.*, 195 Cal. App. 4th 143, 160 (2011). A plaintiff may do so either by pointing to *substantial* direct evidence of discriminatory or retaliatory intent or producing *substantial* evidence to establish that the employer's stated reasons are pretextual. *See Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 862 (2014) ("[I]t is incumbent upon the employee to produce '*substantial responsive evidence*' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the party of the employer.") (emphasis added) (citation omitted).² Appin has not met her burden.

### 1. There Is No Direct Evidence of Discrimination

As Appin correctly argues, "[d]irect evidence is evidence that proves a fact without inference or presumption." (Opp. at 11:1.) "Where a plaintiff offers direct evidence of discrimination that is believed by the trier of fact, the defendant can avoid liability only by proving the plaintiff would have been subjected to the same employment decision without reference to the unlawful factor." *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 67-68 (2000). "Comments demonstrating discriminatory animus *may* be found to be direct evidence if there is evidence of a *causal relationship* between the comments and the adverse job action at issue." *DeJung v. Super. Ct.*, 169 Cal. App. 4th 533, 550 (2008) (emphasis added). On the other hand, where comments demonstrating discriminatory animus are made *outside of* the decision-making process, courts have found that direct evidence of discrimination does not exist. *See, e.g.*, *Trop v. Sony Pictures Ent., Inc.*, 129 Cal. App. 4th 1133, 1148 (2005). Appin argues that she has produced "direct evidence of discrimination." She has not.

---

² Appin argues that "[t]he degree of proof necessary to establish a prima facie case on summary judgment is 'very little,' even less than a preponderance of the evidence." (Opp. at 10:17-18.) Not only does the quoted "very little" language not occur in the case she cites in support of this proposition (*Poland v. Chertoff*, 494 F.3d 1174, 1181 (9th Cir. 2007)), but at this stage, Appin must do more than establish a prima facie case. *See Adetuyi v. City & Cnty. of San Francisco*, 63 F. Supp. 3d 1073, 1084 (N.D. Cal. 2014) (explaining that after the defendant has proffered a legitimate, non-discriminatory reason for the adverse employment decision, "the plaintiff 'must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses'") (internal citation omitted).

2
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

***Gender.*** Appin claims that the purported decisionmakers misgendered her at deposition and in several emails they exchanged about her.[3] (*See* Opp. at :11-5:7, 11:24-12:9.) Two of the individuals who misgendered Appin—Jody Drulard and Kunal Gullapalli—did not know Appin or that she had transitioned, and did not know that she used she/her pronouns when they misgendered her.[4] Morris explained at deposition that she felt horrible about misgendering Appin. (*See* Mot. at 18:23-19:2.) When asked if she objected to Appin correcting her, Morris further explained:

> No, not at all. No. And -- an I'm glad that she constantly corrected me because, obviously, it took me a very, very long time, and is still taking a long time, to consciously call her "her" and not "him." I keep making that mistake. And, again, I want to put on the record that I've known Ricky for 12 years as a gay male, right? Then she moved to San Francisco. So I would see her very rarely as a female. And my brain just had the hardest time just converting that "she" to "he." Although I always call her Ricky, right? So I just want to make sure that it's very clear that it is something that I'm constantly, constantly working on, but when you don't see a person physically, and you only have a memory of a -- of a gay man for so many years, it just takes time. So I do apologize. I feel absolutely horrible about it. I do.[5]

Defendants do not dispute that misgendering ***can***, in certain situations, support a finding of direct evidence of discrimination.[6] But for that type of finding, there must be a causal connection between the misgendering and the adverse employment action—in this case, Appin's employment termination. Here, there is no connection between the two. On the same day that Mergermarket terminated Appin's employment, it terminated the employment of a straight, cisgender male—Stucker—for the same reason it terminated Appin's employment.[7] Prior to that, it had terminated the employment of five other U.S.-based Content Editors, all of whom were cisgender and several

---

[3] Appin claims that Yana Morris misgendered her on several occasions in 2020. *See* Appin Decl. at ¶ 9. She also claims that Mark Seber misgendered her on multiple occasions in 2019 and 2020. *See id.* At deposition, however, Appin testified that she could not recall whether Morris misgendered her at any time after June 7, 2019, and that she did not have any reason to believe Seber discriminated against her. *See* Rebuttal Decl. of Giancarlo Urey, Ex. 23 [Appin Depo.] at 168:14-17, 182:4-183:14. A party cannot create an issue of fact by submitting an affidavit contradicting her prior deposition testimony. *See, e.g.*, *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).
[4] *See* Ex. 19 [Drulard Depo.] at 70:24-71:5, 86:12-18; *see also* Ex. 20 [Gullapalli Depo.] at 11:23-12:13, 56:23-57:5.
[5] Ex. 5 [Morris Depo] at 131:8-25.
[6] Appin relies on *Doe v. Progressive Casualty Insurance Co.*, No. 21-cv-02602-BLF, 2023 WL 6120670 (N.D. Cal. 2023), in support of her claim that misgendering/deadnaming constitutes direct evidence of discrimination. In *Doe*, the plaintiff alleged his supervisors forced him to come out as transgender, reduced his authority, transferred him against his will, failed to update his name and pronouns in company systems, improperly scrutinized his medical appointments, and "appeared disgusted" when he appeared in traditionally masculine attire. *See id.* at *2-3. The plaintiff also presented evidence his supervisors misgendered him "at least five times," and at least one "did not consider misgendering to be a 'big deal.'" *Id.* at 3. The court held that disputed issues of material fact remained because the defendant's motion only addressed allegations regarding the plaintiff's reduced authority and transfer. *See id.* Notably, the district court followed the *McDonnell-Douglas* burden-shifting framework, indicating that it did not believe the plaintiff's allegations of misgendering constituted direct evidence of discrimination. *See id.* at *6.
[7] *See* Ex. 2 [Appin Depo.] at 72:21-73:7; Morris Decl. at ¶ 8.

3
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

of whom identified as male.[8] Termination of Appin's employment was unrelated to her gender or identification as a transgender woman. *See Gaines v. SBC Commn's, Inc.*, 313 Fed. App'x 4, 6 (9th Cir. 2008) (affirming summary judgment where plaintiff was only member of protected class in group of employees subject to reduction in force).

*Age*. Appin claims "she felt she had been overlooked due to age." (Opp. at 13:1.) An employee's beliefs are not evidence. *See McRae v. Dep't of Corr. & Rehab.*, 142 Cal. App. 4th 377, 396 (2006) (personal beliefs and concerns are not evidence); *see also Carmen v. SanFrancisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive.").

She also argues that individuals at Mergermarket inappropriately referred to her as a "legacy asset" or to her job duties as a "legacy arrangement." (*See* Opp. at 12:21-25.) Given the context in which those phrases were used—that is, post-acquisition of Mergermarket by the ION Group— there was nothing derogatory or inappropriate about them. *See, e.g.*, *LeMar v. CVS Pharmacy, Inc.*, No. CV 14-1698 PSG (CWx), 2015 WL 12681646, at *3 (C.D. Cal. May 5, 2015). A plaintiff in a discrimination case does not create a triable issue by pointing to innocuous statements and recasting them as offensive derogatory statements. *See, e.g.*, *Messer v. Ohio*, No. 1:11-cv-246, 2013 WL 394333, at *12 (S.D. Ohio Jan. 31, 2013) (granting summary judgment for the defendant, noting that "[o]ther than conclusory assertions that their harassment was gender 'and/or' age-based, Plaintiffs offer no supporting evidence at all of age-based animus").

*Disability*. Appin does not argue that there is direct evidence of disability discrimination. Instead, she argues that *because* she was disabled and *because* she was subjected to an adverse employment action, the adverse employment action must have been the product of disability discrimination. (*See* Opp. at 13:14-4.) The Court should reject Appin's speculative disability discrimination claims outright. *See, e.g.*, *Guthrey v. State of Cal.*, 63 Cal. App. 4th 1108, 1118 (1998) (mere difference in gender "does not give rise to the inference that her alleged aggressive conduct was motivated by a desire to discriminate on the basis of gender. Without some evidence to

---

[8] Morris Decl. at ¶ 4; Ex. 2 [Appin Depo.] at 72:21-73:2 (explaining that she had laid off "the other two gentlemen after we were asked to do so"), 213:19-22 (acknowledging that individuals who were laid off were all cisgender).

4
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

make such an inference a reasonable one, it is mere speculation to suspect gender discrimination led to Lucas's allegedly hostile conduct. Speculation is insufficient.").

Perhaps recognizing that direct evidence of discrimination does not exist, Appin invites this Court to evaluate her evidence in the context of *Reid v. Google*, 50 Cal.4th 512 (2010). (*See* Opp. at 14:19-26.) Defendants also extend this invitation. In *Reid*, the California Supreme Court considered whether comments demonstrating discriminatory animus were sufficient to defeat summary judgment in a discrimination case. The California Supreme Court explained:

> Although stray remarks may not have strong probative value when viewed in isolation, they may corroborate direct evidence of discrimination or gain significance in conjunction with other circumstantial evidence. Certainly, who made the comments, when they were made in relation to the adverse employment decision, and in what context they were made are all factors that should be considered. ***Thus, a trial court must review and base its summary judgment determination on the totality of evidence in the record. . . .***

*Id.* at 541 (emphasis added). The California Supreme Court went on to explain that "the stray remarks cases merely demonstrate the 'common-sense proposition' that a slur, in and of itself, does not prove actionable discrimination." *Id.* (citation omitted).

Here, looking at the totality of the circumstances, a reasonable trier of fact could only reach one conclusion: the termination of Appin's employment was legitimate, non-discriminatory, and non-retaliatory. In 2019, Mergermarket initiated a restructuring effort that ultimately eliminated all ten U.S.-based content-editorial positions. The gender identity of the Content Editors did not matter—Mergermarket laid off men and women, including at least one transgender woman. Nor did the ages of the Content Editors matter—Mergermarket laid off younger Content Editors, including one who was 34 years old. Mergermarket also laid off individuals with different degrees of physical limitations, including several Content Editors who had never disclosed any disability. In other words, Mergermarket's restructuring was gender, age, and disability neutral.

### 2. Nor Did Plaintiff Establish a Triable Issue as to Pretext

Because there is no direct evidence of discrimination, to survive summary judgment, Appin must produce ***substantial*** evidence of pretext. She did not.

***First***, Appin repeatedly argues that Mergermarket's stated reason for its decision to terminate Appin's employment is unworthy of credence because Content Editors ***outside of*** the

5
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1  United States (e.g., London-based and Hong Kong-based Content Editors) were not impacted by
2  Mergermarket's restructuring.
3  (*See, e.g.*, Opp. at 1:14-15, 8:1-3,
4  20:20-21.) Mergermarket has
5  never argued that its
6  restructuring impacted all content
7  editing functions outside of
8  India. Instead, as the undisputed
9  evidence shows (including the
10 email copied on this page, which
11 is attached as Exhibit E to the Morris Decl.), the restructuring impacted U.S.-based Content
12 Editors.[9] In total, ten U.S.-based Content Editor positions were eliminated by the restructuring.[10]
13 Appin was neither singled out nor targeted, and there is no evidence to the contrary.
14      ***Second***, Appin attempts to create a triable issue by pointing to "comparators" who she
15 claims were treated more favorably than she was. But the only proper comparators are the other
16 nine U.S.-based Content Editors and, as already explained, their positions, too, were eliminated.
17      "To prove disparate treatment, a plaintiff must show that a comparator employee was
18 similarly situated to him in all relevant respects." *Amfosakyi v. Frito Lay, Inc.*, 496 F. App'x 218,
19 224 (3d Cir. 2012); *see also Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (explaining that a
20 plaintiff seeking to rely on comparator evidence "must show that [the alleged comparators] are
21 similarly situated to [the plaintiff] in all relevant respects").
22      Each of Appin's purported comparators (*see* Opp. at 8:9-24) is not similarly situated to
23 Appin in all relevant/materials respects:
24   • **Yana Morris** – although based in the United States, Morris is not a Content Editor.
25     She is a Director of Mergermarket who manages a team of 400 people, including
26     journalists, content managers, and Content Editors.[11]
27
28  [9] *See also* Ex. 5 [Morris Depo.] at 59:12-25, 243:4-244:8; Morris Decl. at ¶ 4.
    [10] Morris Decl. at ¶¶ 4, 5, 8.
    [11] *See* Morris Decl. at ¶ 1; *see also* Ex. 5 [Morris Depo.] at 143:5-11.

6
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

- **Romil Timbadia** – when asked to compare Appin's duties with Timbadia's duties, Morris testified as follows: "Oh, it's very different. Ricky never managed third-party content. It's a massive, massive operation. It's almost 70 percent of all the content we produce. So right there, that's the biggest difference. [Timbadia's] job is substantially bigger than what Ricky did, in impact and volume and everything else."[12]
- **Neal Armstrong** – as Appin readily admits, Armstrong is not based in the United States. (*See* Opp. at 8:12-13.[13])
- **John Tsang** – as Appin readily admits, Tsang is not based in the United States. (*See* Opp. at 8:15-16.[14])
- **Adam Routh** – as Appin readily admits, Routh is not based in the United States. (*See* Opp. at 8:16-18.[15])
- **Jonathan DeHart** – as Appin readily admits, DeHart is not based in the United States. (*See* Opp. at 8:18-19.) Moreover, DeHart "edits a difficult time zone. He mostly edits M & A. He's based in Tokyo which is useful as a time zone for us, because it's even ahead of Hong Kong."[16]
- **Voon Kin Hoo** – Appin effectively acknowledges that Kin Hoo did not work in the United States.[17] Evidence submitted by Appin shows he worked out of Hong Kong.[18]

Appin tries to create a triable issue by pointing to individuals whose positions were not eliminated as part of Mergermarket's restructuring. The individuals she identifies either did not work as Content Editors or did not work as Content Editors in the United States. They are not similarly situated to Appin in all relevant/materials respects, and Appin's reliance on comparator information fails to create a triable issue. *Cf. Marnocha v. St. Vincent Hosp. & Health Ctr., Inc.*, 986 F.3d 711, 722 (7th Cir. 2021) ("Using the appropriate comparators, the Carmel neonatologists, the only similarly situated neonatologist under forty was not treated more favorably. Instead, all

---

[12] Ex. 5 [Morris Depo.] at 148:16-24.
[13] *See also* Ex. 21 [Kobryn Depo.] at 153:22-154:2
[14] *See also* Ex. 13 [Bandyopadhyay Depo.] at 130:12-18.
[15] *See also id.* at 130:12-18.
[16] *Id.* at 128:11-130:11.
[17] *See* Ex. 2 [Appin Depo.] at 72:21-73:7 (Appin acknowledging that by 2022, Mergermarket only employed two Content Editors in the United States).
[18] *See* Appin's Ex. D at pp. 4, 5, filed conditionally under seal. *See* Dkt. 154.

7
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

were fired and offered the identical opportunity to reapply and interview for the remaining opening."); *Wills v. Super. Ct.*, 195 Cal. App. 4th 143 172-73 (2011) (affirming summary judgment when plaintiff's comparators were not "similarly situated" employees).

***Third***, Mergermarket's explanation as to the reason for Appin's employment termination has never wavered. Appin has not pointed to any inconsistencies in this regard. Quibbling with who the decisionmakers were—or their specific involvement in the restructuring that ultimately impacted Appin's job—does not demonstrate the level of "shifting stories" sufficient to create a triable issue. *See E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (shifting from decrease in duties to performance deficiencies to comparison of employees based on layoff criteria); *Payne v. Nw. Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997) (shifting from violating attorney-client privilege to insubordination to violating ethics code to threatening a superior). This is especially true in light of the fact that all individuals identified as decisionmakers acknowledge the fact of the restructuring even if they have differing views on their respective involvement.[19]

***Fourth***, Appin argues "Defendants' use of salary had an adverse impact on the only two content editors who were over age 65, while younger content editors outside of India kept their jobs." (Opp. at 20:19-20.) This argument improperly assumes Appin and Stucker were the only two Content Editors who lost their jobs as a result of the restructure. In fact, eight other Content Editors lost their jobs (or their positions were eliminated after they voluntarily left). Appin herself admits younger Content Editors were let go as part of Mergermarket's restructuring.[20] It is undisputed that a 34-year-old Content Editor lost his job as part of the restructure.[21] Appin failed to proffer evidence showing Mergermarket's restructuring had an adverse impact on older workers.

***Fifth***, Appin argues "pretext may also be inferred . . . by the terminated employee's job performance before [the employment] termination." (Opp. at 20:23-24.) Mergermarket has never argued it terminated Appin's employment—or that of other U.S-based Content Editors—because of deficient performance. Thus, Appin's performance history is insufficient to establish pretext. *See, e.g.*, *Vira v. Crowley Liner Servs., Inc.*, 723 Fed. App'x 888, 895 (11th Cir. 2018) ("Finally,

---

[19] *See* Ex. 8 [Seber Depo.] at 54:20-55:8, 66:11-67:3, 143:25-144:9; *see also* Ex. 19 [Drulard Depo.] at 34:8-21, 75:4-76:6, 80:23-81:15; Ex. 20 [Gullapalli Depo.] at 30:1-7, 30:22-31:4, 33:9-19, 56:12-22.
[20] *See* Ex. 2 [Appin Depo.] at 214:2-4.
[21] *See* Morris Decl. at ¶ 4.

8
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1  the fact that Mr. Vira was laid off despite receiving numerous positive performance reviews, alone
2  does not constitute pretext. Cost generally motivates layoffs, exposing even well-regarded
3  employees to the risk of being laid off. Without any evidence supporting pretext, the district court
4  properly granted summary judgment on Mr. Vira's age discrimination and FMLA retaliation
5  claims in favor of Crowley.").

6  ***Sixth***, in support of her claim that "timing demonstrates pretext," Appin incorrectly claims
7  that the Court of Appeal in *Lin v. Kaiser Foundation Hospitals*, 88 Cal. App. 5th 712 (2023) held
8  the plaintiff's employment termination was pretextual because she was added to a RIF after
9  requesting medical leave. (*See* Opp. at 21:11-26.) This is not correct. In December 2018, the
10 plaintiff was included on a tentative list of 31 employees to be included in a potential RIF in 2019.
11 The next month, the plaintiff injured her shoulder. While she was on approved modified duty, her
12 supervisor gave her low performance ratings for the first time due to her "slow delivery,"
13 "unavailability," and "pace of execution." *Id.* 717-18. The supervisor also questioned the
14 plaintiff's need for ongoing treatment and pressured her to work unpaid overtime. *See id.* at 718.
15 The plaintiff complained to Human Resources and went out on approved medical leave soon
16 thereafter. *See id.* In March 2019, the defendant finalized the RIF list with 17 employees. *See id.* at
17 719. The plaintiff was included based on her supervisor's evaluation of her performance. *See id.*
18 She was notified her position had been eliminated in April 2019, a week after other affected
19 employees who were not on medical leave. *See id.* The Court of Appeal held that a jury could find
20 the plaintiff's inclusion in the RIF was substantially motivated by her disability because her
21 supervisor evaluated her performance "much more harshly" post-disability, and her inclusion was
22 based on her supervisor's evaluation. *See id.* at 726-27.

23 Here, there is no evidence that Appin was added to the restructuring because of any
24 complaints she made following the 2019 layoffs or because of her leg injury. The undisputed
25 evidence confirms that it was always the plan to eliminate all U.S.-based Content Editors, including
26 Appin, and the company did not replace any of the U.S.-based Content Editors that left the company
27 between 2019 and 2022. Moreover, there is no evidence—and Appin cites to none—that Stucker,
28 whose employment was terminated at the same time as Appin's, ever raised any sort of complaint.

9
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Seventh*, surprisingly, Appin argues that Defendants "repeatedly discriminated against [her] on the basis of her gender identity through its provisions within its medical insurance plan." (Opp. at 2:23-24.) It is undisputed that Mergermarket's health insurance plan covered Appin's January 2019 gender confirmation surgery.[22] Appin's second gender confirmation surgery (a revision surgery) took place after the ION Group acquired Mergermarket. Initially, the ION Group health insurance plan did not cover transgender-related services. As Appin knows, however, the ION Group added transgender-related services to the health plan (see the email sent to Appin to inform her of this update, which is copied here and attached as Exhibit H to the Morris Decl.). Thus, while Appin claims that "Defendants' insurance denied the appeal and refused to cover corrective surgery, stating that ION did not pay for 'sex transformation' related healthcare," the facts do not support that claim. Indeed, at her deposition, Appin acknowledged that transgender-related services were added to the ION Group health insurance plan and that ION Group negotiated a lower charge with her out-of-network provider after the provider declined an offer to join the network.[23]

*Finally*, Appin claims that she opposed discrimination multiple times. (*See* Opp. at 18:8-19:15.) Even if true—and for purposes of this Motion, Defendants will assume she did—Appin's retaliation claims fail. To survive summary judgment on her retaliation claims, Appin must offer "specific" and "substantial" circumstantial evidence to prove pretext in a retaliation claim under the FEHA. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001). She cannot do so for several reasons, chief among them being that every U.S.-based

---

[22] *See* Ex. 2 [Appin Depo.] at 148:24-149:3 (Appin acknowledging that, other than a deductible, she did not have to pay for her first gender confirmation surgery).

[23] *See id.* at 203:13-205:4 (Appin admitting that she learned that as of January 1, 2021, transgender services would be covered by the ION medical plan), 206:19-207:25 (Appin admitting that her doctor declined to join the insurance network and that her insurance company nevertheless negotiated a lower rate with him).

10
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

---

Embedded email image content:

> This is brilliant news! Best Christmas gift ever, many thanks!
> Have a great holiday and again thank you indeed for your efforts on my behalf, hugely appreciated.
> Warm regards, Ricky
>
> Get Outlook for iOS
>
> From: US-Benefits <us-benefits@iongroup.com>
> Sent: Tuesday, December 22, 2020 11:21:48 AM
> To: Ricky Appin <ricky.appin@acuris.com>; Mark Seber <mark.seber@iongroup.com>; Yanita Morris <Yanita.Morris@acuris.com>
> Cc: Amber Bradbury <amber.bradbury@iongroup.com>
> Subject: RE: surgery with Dr. Bowers
>
> Hi Ricky,
>
> So have an update.. As of 1/1/2021, ION has approved Transgender Services as covered expenses to the ION medical plan. Please note there is a lifetime Maximum Benefit of $75,000.

1  Content Editor lost his/her/their job as a result of Mergermarket's restructuring. Appin's alleged

2  protected activity had nothing to do with Mergermarket's decision to terminate her employment.

3  **B.     Appin Failed to Establish A Basic Element of Her CFRA Claims**

4  In the Motion, Defendants showed Appin could not establish a critical element of her CFRA

5  retaliation and interference claims because she did not exercise her right to take or otherwise

6  request qualifying leave. (*See* Mot. at 20:16-22, 22:5-15.) Appin did not dispute that she never

7  requested qualifying leave and thus concedes that point. *See, e.g.*, *Garrett v. City of Los Angeles*,

8  No. CV 12-1670 FMO (SSX), 2014 WL 11397949, at *11 (C.D. Cal. Mar. 3, 2014) (summary

9  judgment in favor of the defendants on unlawful interference claim because the plaintiff did not

10  oppose the defendants' arguments and thus "abandoned" the claim); *see also Tatum v. Schwartz*,

11  No. CIV S-06-01440DFLEFB, 2007 WL 419463, *3 (E.D. Cal. Feb. 5, 2007) (the plaintiff "tacitly

12  concede[d]" that her claim should be dismissed by failing to address the defendants' argument in

13  her opposition, and granting the defendants' motion to dismiss with respect to that claim).

14  Appin's reliance on *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112 (9th Cir.

15  2001), is misplaced. In *Bachelder*, the employer discharged the employee because of the

16  employee's attendance issues and its mistaken belief that she had exhausted all of her leave under

17  the Family and Medical Leave Act. *See id.* at 1122-30. The employer argued that it could not have

18  been liable to the employee because of this mistaken belief. *See id.* at 1130. The Ninth Circuit

19  rejected this argument, explaining that "[e]mployees need only notify their employers that they will

20  be absent under circumstances which indicate that the FMLA might apply[.]" *Id.*

21  Here, however, Mergermarket is not arguing (and has never argued) that it terminated

22  Appin's employment because she had requested a protected leave of absence, because she was

23  about to take a protected leave of absence, or because it mistakenly believed that she was not

24  entitled to a protected leave of absence. (*See, e.g.*, Mot. at 10:1-13:11.) Instead, with respect to

25  Appin's CFRA claims, it argues that Appin cannot meet a basic element of her claims because she

26  did not exercise her right to take or otherwise request qualifying leave:

27  Q:   In connection with this January 20, 2022, leg injury, *you didn't request any type of formal leave, such as medical leave; is that right*?

28  A:   *That's correct*.

11
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

          \*      \*      \*      \*

Q: And are you familiar with the California Family Rights Act?
A: I am.
Q: *You never applied for leave under the California Rights Act, did you*?
A: *I did not*.

          \*      \*      \*      \*

Q: You didn't need to seek prior approval from any manager or supervisor [to take time off], did you?
A: No.
Q: And this is consistent with what you did whenever you needed time off from work because of your January 2022 leg injury? *You would simply update your team about your need to be away from your desk, right*?
A: *Yes*.
Q: And even though you would step away from your desk for sometimes hours at a time, you would still receive your complete salary, correct?
A: Yes.[24]

Mergermarket terminated Appin's employment for a legitimate, non-discriminatory, and non-retaliatory reason. It did not interfere with Appin's right to take CFRA leave or otherwise retaliate against her because of an intent to take CFRA leave.

### C.    Appin's *Derivative* Wrongful Termination Claim Also Fails

Although unclear, it appears that Appin is arguing that her wrongful termination claim should survive summary judgment even if her discrimination and retaliation claims do not. (*See* Opp. at 22:20-21.) Defendants do not dispute that, under some circumstances, a plaintiff may maintain a wrongful termination claim even if her FEHA and/or CFRA claims are subject to summary judgment. Here, though, Appin's wrongful termination claim is tethered to and indeed derivative of her FEHA and CFRA discrimination and retaliation claims.[25] If those claims fail—and they should for the reasons described in the Motion and herein—then so, too, does her wrongful termination claim. *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) ("because [the plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails"); *see also Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (holding that

---

[24] Ex. 2 [Appin Depo.] at 224:7-16, 226:15-20, 230:6-231:3 (emphasis added).

[25] *See* Dkt. 51 [FAC] at ¶ 84 ("It is the public policy of the State of California that employers are prohibited from discriminating against an employee on the basis of a protected status. These public policies are embodied in, among other places, the Fair Employment and Housing Act and California Family Rights Act.") and ¶ 85 ("Defendants unlawfully discriminated against Plaintiff based on her age, disability, gender, and medical leave, all of which have protected status.").

12
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the plaintiff's wrongful termination claim fails with his disability discrimination claim).

### D. Appin's Opposition Confirms That Her Contract Claim Is Woefully Deficient

Defendants do not dispute the general proposition, as Appin argues, that "California courts enforce a contract if it is *sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached*." (Opp. at 23:10-11 (emphasis added).). At issue here is whether the alleged "promises" that Mergermarket made to Appin were sufficiently definite to form a binding contract. They were not.

Appin relies on *Hunter v. Sparling*, 87 Cal. App. 2d 711 (1948),[26] for the proposition that an employer's promise to "pay the plaintiff [] a 'substantial' amount of money upon his retirement" constitutes an enforceable promise. (*See* Opp. at 23:16-17.) In *Hunter*, the promise of the employer, a Japanese bank, to pay the plaintiff "a 'substantial,' or a 'large' sum of money" upon his retirement was deemed an enforceable contract because even though the plaintiff did not know the formula for calculating the amount, that formula was ascertainable from the Japanese language rules and regulations available at the home office in Japan. *See id.* at 718, 724-25. The promise was therefore not too uncertain in its terms to be enforceable. *See id.* at 724-25. In contrast, here, there is no evidence that the terms of the alleged contract between Mergermarket and Appin were ascertainable by the conduct of the parties or otherwise—and Appin admits the same.[27]

Nor may Appin rely on *Sabatini v. Hensley*, 161 Cal. App. 2d 172 (1959), a case decided under the equitable doctrine of quantum meruit. (*See* Opp. at 23:19-21.) Appin never alleged unjust enrichment or otherwise asserted a claim for quantum meruit.[28] And, although she filed two separate motions for leave to amend—one of which is still pending—she never sought leave to assert a claim for quantum meruit. It is too late to do so now. *See Matthews v. Xerox Corp.*, 319 F. Supp. 2d 1166, 1172 (S.D. Cal. 2004) ("The Court is mindful that case law indicates that a plaintiff may not raise a new theory of liability for the first time, after the close of discovery, in his opposition to summary judgment without amending his complaint."); *see also Nagler v. Garcia*,

---

[26] In her Opposition, Appin cites a different "*Hunter*" case—*Hunter v. Ryan*, 109 Cal. App. 736 (1930). Given her description of the *Hunter* case—particularly her reference to a "'substantial' amount of money"—it is clear she intended to cite *Hunter v. Sparling*.

[27] Ex. 2 [Appin Depo.] at 139:12-141:1 (Appin acknowledging that at the time Hamilton Matthews told her she would be "take[n] care of" when she retired, Matthews also said words to the effect "I can't promise you how much").

[28] *See generally* Dkt. 51 [FAC].

13
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

370 Fed. App'x 678, 682 (6th Cir. 2010) (explaining that the district court "rather generously" construed the quantum meruit arguments in the plaintiff's brief opposing summary judgment "as an implicit motion to amend" while holding that the district court did not abuse its discretion by denying the motion for leave); *Niemi v. NHK Spring Co.*, 543 F.3d 294, 307 (6th Cir. 2008) (holding that the district court did not abuse its discretion in denying an "eleventh hour" amendment to add a quantum meruit claim).

*Barton v. Elexsys International, Inc.*, 62 Cal. App. 4th 1182 (1998)—a case cited by Defendants in the Motion and one that Appin failed to address—is directly on point. (*See* Mot. at 23:9-19.) Appin's contract claim fails as a matter of law.

### E.     Appin Is Not Entitled to Punitive Damages

Appin argues that she is entitled to punitive damages because of "Defendants' malicious firing of Plaintiff." (Opp. at 24:1-2.) Calling something "malicious" does not make it so. More importantly, as Defendants explained in the Motion, an employment "termination for an improper reason" is not sufficient to support an award for punitive damages. *See Scott v. Phoenix Sch.*, 175 Cal. App. 4th 702, 716 (2009).

### F.     Summary Judgment Should Be Entered for All Defendants

Defendants' Motion assumed Dealogic, L.L.C., Mergermarket Ltd., and ION Trading, Inc. employed Appin in same manner as Appin's actual employer, Mergermarket. (*See* Mot. at 24:21-25:9.) Despite the Motion not arguing against joint employment, Appin asserts that several other entities (including some not in the case) were co-employers with Mergermarket, essentially asking this Court for an affirmative finding without properly (or timely) filing her own motion for summary judgment. Appin cannot create a genuine issue of material fact on the basis of a dispute not raised by the Motion. *See* Fed. R. Civ. P. 56(c).

### G.     The Court Should Deny Appin's Request for Additional Time

In a last ditch effort to save her case, Appin claims she needs additional time to oppose because of pending discovery motions. But this was not a premature motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). It was filed on the last day to file a dispositive motion. Moreover, counsel's declaration does not meet the requirements of Rule 56(d) of the Federal

14

DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1  Rules of Civil Procedure, which requires that the declaration in support present facts essential to
2  justify the Opposition which Appin has not been able to obtain. Yet she does not explain what
3  facts she is seeking or why she did not obtain the evidence earlier in the proceedings. Indeed, this
4  Court amended the Scheduling Order twice to allow her more time for discovery.

5  In her request, Appin seeks only the discovery that is the subject of the three motions that
6  were pending at the time of her Opposition. Since then, the Court denied Appin's motion seeking
7  to compel production of additional documents, granted one additional hour of testimony from
8  Kobryn, and sought additional information on the third motion regarding apex witness Gullapalli.
9  (*See* Dkts. 156, 157.) Appin's counsel's declaration asserts only that these depositions are
10 "crucial" to proving that Defendants' defense was pretextual, but it is entirely unclear what more
11 she might ask that relates to that subject. She has already taken six hours of Kobryn's testimony,
12 largely regarding the restructure, and the Court's Order precludes her from asking materially the
13 same questions. Moreover, Appin has complete depositions from Morris, Seber, Bandyopadhyay,
14 Drulard, and Gullapalli, and she explored her pretext argument extensively with each of them.
15 Even if the Court allows more time with Gullapalli (which it should not), Appin does not identify
16 facts, but only categories of information ("corporate structure, ownership and the financial
17 accounting methods of the Defendants" (Dkt. 153-1 [Nichols Decl.] at 3:23-25)), all of which are
18 targeted at the joint employer issue that is expressly assumed for purposes of the Motion. The
19 declaration in support of her Rule 56(d) request does not identify a single additional fact that she
20 would seek from Kobryn or Gullapalli that should delay summary judgment.[29]

### III. CONCLUSION

For all of the foregoing reasons and those described in the Motion, the Court should grant Defendants' Motion and enter summary judgment in their favor and against Appin.

DATED: November 29, 2024         DAVIS WRIGHT TREMAINE LLP
                                 By: /s/ *Giancarlo Urey*
                                         Giancarlo Urey
                                 Attorneys for Defendants

---

[29] Defendants note that, in line with the Court's order to produce Kobryn "as soon as possible," they offered her availability on November 28, December 2, 3, 4, 5, 9, 10, 11, 12, or 13, but Appin sought to push the one single hour (for which counsel was already prepared nearly two months ago) to December 17 or 18, 2024, when Kobryn is not available, and otherwise offered only dates in mid-January. Appin has not explained why not one of the three lawyers on her case can fit **one hour** of deposition into the calendar before those late-December dates.

15
DEFENDANTS' REPLY ISO MOTION FOR SUMMARY JUDGMENT
Case No. 4:23-cv-03372-HSG
4893-8666-9567v.5 0122151-000001

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVE., 27TH FLOOR
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899